NATIONAL LABOR RELATIONS BOARD et al., Petitioners,

v.

DAVID BUTTRICK COMPANY, Respondent.

No. 6636.

United States Court of Appeals First Circuit.

Aug. 22, 1968.

Warren M. Davison, Washington, D. C., with whom Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Marion Griffin, Washington, D. C., Atty., were on the brief, for petitioners.

Mark G. Kaplan, Boston, Mass., with whom Samuel E. Angoff and Angoff, Goldman, Manning & Pyle, Boston, Mass., were on the brief, for intervenor.

John J. Delaney, Jr., Boston, Mass., with whom Murray S. Freeman and Nutter, McClennen & Fish, Boston, Mass., were on the brief, for respondent.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

For the second time around, the National Labor Relations Board, subsequent to our prior remand, orders respondent, David Buttrick Company, to bargain in good faith with a union, Local 380, Milk Wagon Drivers and Creamery Workers Union, a local of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. Buttrick has refused to bargain despite the certification of Local 380, because it contends that the local is subject to a disqualifying conflict of interest arising out of a substantial loan of some $4.7 million made to a competitor, Whiting Milk Company, by the Teamsters Central States, Southeast and Southwest Areas Pension Fund (Fund).

Initially this issue was dismissed by the Board's Regional Director, who observed that Local 380 was not affiliated with the Fund and did not participate in the loan negotiations; and subsequently by the Board, which in affirming said that there was no "definite or substantial connection between the Union and the loans by the Fund to Whiting". We did not feel that these findings sufficiently confronted the conflict of interest issue and we remanded the matter to the Board "in order that it may assess the potential, not merely the actuality, of conflict of interest and frame an order which, hopefully, will balance the legitimate interests of the Fund, respondent, International Local 380, and respondent's employees."[1] We also expressed the hope that the Board, recognizing the impressive proliferation of and increase in jointly administered labor-management pension funds, would develop guidelines to prevent the kinds of investment by such funds in directly competing enterprises which might becloud with suspicion the process of collective bargaining.[2]

The Board reexamined the powers of the international union and its General

---

1. NLRB v. David Buttrick Co., 361 F.2d 300 (1st Cir. 1966).

2. This latter hope has not proved to be realistic. We appreciate that the complexity of the problem and the present avowed lack of empirical data and analysis render impracticable the formulation of useful guidelines which could fairly be applied to this case. We remain convinced, however, of the eventual desirability of promulgating adequate rules.

While comments in the law journals have varied in their prescriptions, they have generally agreed in the diagnosis that some ground rules are called for. 8 B.C.Ind. & Com.L.Rev. 347 (1967); Note, Conflict of Interest Problems Arising From Union Pension Fund Loans, 67 Colum.L.Rev. 162 (1967); 35 Geo. Wash.L.Rev. 594 (1967); 80 Harv.L.Rev. 1606 (1967); 19 Stan.L.Rev. 1093 (1967).

President over locals and found them limited; searched in vain for any evidence of intervention by International in affairs of the local; viewed the complexity of the problems stemming from pension fund investments and the lack of empirical data; and, while asserting sensitivity to "future conduct evidencing pressure * * * to bend Local 380's bargaining course towards loan protection", concluded that it was not in a position to promulgate guidelines and that "the possibility of [International's] intervention in local bargaining is too remote to disqualify Local 380 from representing Respondent's employees."

Since the Board's decision, respondent has sold its dairy business to a manufacturer of ice cream. Notwithstanding this, we agree with all parties that the case should not be considered moot. Almost four years have passed since Local 380 was certified as bargaining representative of respondent's employees. We cannot say that during this period events have not occurred which created issues justifying a bargaining agent for those who were Buttrick's employees. See NLRB v. Haspel, 228 F.2d 155 (2d Cir. 1955), and NLRB v. Somerset Classics, Inc., 193 F.2d 613, 616 (2d Cir.), cert denied, 344 U.S. 816, 73 S.Ct. 10, 97 L.Ed. 635 (1952).

■■ We affirm. There is a strong public policy favoring the free choice of a bargaining agent by employees. This choice is not lightly to be frustrated. There is a considerable burden on a non-consenting employer, in such a situation as this, to come forward with a showing that danger of a conflict of interest interfering with the collective bargaining process is clear and present. This respondent has not done.

■ In this case respondent has contented itself with arguing that the Board made its own, and erroneous, interpretation of the constitutional powers of International, contrary to our own interpretation. But the Board having scrutinized the possibilities of the exercise of power by International which concerned us, and having found them remote, we cannot here say that its judgment is capricious or unsupported.

Even assuming, arguendo, that the Board erred in its conclusion that the possibility of International's control of Local 380 is too remote to have any significance, there is no showing that Whiting's financial situation was such as to be likely to give the Fund an equity-like interest in it. All that the Fund is entitled to receive from Whiting under the loan agreement is full repayment of the principal plus interest in fixed monthly installments. So long as Whiting does not go out of business or its assets fail to cover its liabilities, the Fund would not be concerned with the everyday fluctuations in Whiting's business. The loans appear to be heavily secured and respondent offered no evidence that Whiting was in danger of default.[3] On this record we cannot find

3. The initial $4,000,000 loan represented a consolidation of two loans, evidenced by notes executed on April 4, 1963 and July 25, 1963. Whiting's "certificate of condition" filed with the Commonwealth of Massachusetts covering the year ending December 31, 1963 reveals that as of that date Whiting had total assets of $11,937,-591.92, and a capital surplus of $1,786,-704.89, after subtracting all outstanding liabilities including the mortgages. The certificate also shows a profit figure of $678,730.92, which respondent, in its original brief prior to remand, erroneously construed as a loss.

The loan was secured by real estate mortgages and personal property security agreements. As additional security for the loan, the major stockholding family pledged its Whiting stock.

In the Stockholders' Pledge and Agreement (July 25, 1963), the stockholders represented and warranted to the Fund that there had been no adverse changes in Whiting's financial condition since the 1962 statement and that "there had been no labor trouble or any other event or condition of any character materially or adversely affecting the business or prospects of Whiting." Since 1963 the company's financial status seems to have improved. In January 1965 the Fund granted Whiting a $700,000 loan which was secured similarly to the previous

a proximate danger of infection of the bargaining process.

The Board order will be enforced to the extent that the sale of Buttrick's business has not mooted issues appropriate for collective bargaining.

ones. Robert B. Friedlander, Vice-President of Whiting, stated early in 1965 that over $1,000,000 in new construction had been achieved since June 1963. And in a Second Stockholders' Pledge and Agreement (January 1965), the stockholders represented and warranted that "since

December 31, 1962, the financial condition of Whiting has improved and that they [knew] of no event or condition of any character that is likely materially or adversely to affect the business or prospects of Whiting or the security of the Fund."