R & M KAUFMANN, a Division of Russ Togs, Inc., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 71–1511.

United States Court of Appeals, Seventh Circuit.

Argued April 27, 1972.

Decided Sept. 21, 1972.

Certiorari Denied March 26, 1973. See 93 S.Ct. 1529.

**302**

Jerome B. Kauff, New York City, for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Joseph E. Mayer, Atty., NLRB, Washington, D. C., for respondent.

Before PELL and STEVENS, Circuit Judges, and LARAMORE, Senior Judge.*

PER CURIAM.

The National Labor Relations Board seeks enforcement of a bargaining order based on its findings that the employer (Kaufmann) [1] violated §§ 8(a)(1) and 8(a)(5) of the National Labor Relations Act [2] by refusing to bargain with the union (District 65).[3] The question presented is whether District 65 merits certification as the collective bargaining representative of Kaufmann's employees despite its close relationship and affiliation with the National Association of Women's and Children's Apparel Salesmen, Inc. (NAWCAS), an organization previously denied certification by the Board on conflict of interest grounds. We also hold that the Board's reasons for disqualifying NAWCAS also disqualify District 65; it is not sufficiently independent of NAWCAS to insure good faith representation of the employees in the bargaining unit.

District 65 is a long established labor union presently representing almost 30,000 members under more than 2,000 individual collective bargaining agreements. Prior to its affiliation with NAWCAS, however, it had never represented traveling apparel salesmen who participate in trade shows organized and conducted by NAWCAS and its affiliate members. The majority of NAWCAS' members are independent contractors and are not entitled to union representation under § 2(3) of the Act. The rest are protected by the Act as employee traveling salesmen for individual apparel manufacturers.

Starting in 1965, NAWCAS sought to achieve union status with the help of District 65. The two organizations originally operated under an informal working arrangement; a formal affiliation agreement was signed on July 20, 1967. Under the agreement, District 65 carries on essentially all the "union"

---

* Senior Judge Don N. Laramore of the United States Court of Claims is sitting by designation.

1. R & M Kaufmann, a Division of Russ Togs, Inc.

2. 29 U.S.C. § 158(a)(1) and (5).

3. District 65, Wholesale, Retail, Office and Processing Union.

functions of NAWCAS. NAWCAS, on its part, collects dues for District 65 from its members, continues to carry on its trade association activities, and retains the right "to make all decisions affecting the interests of its members in accordance with its constitution and by-laws."[4]

The first attempts by the NAWCAS–District 65 combination to organize employee traveling salesmen were frustrated by the Board's decision in Bambury Fashions, Inc., 179 NLRB 447, 72 LRRM 1350 (1969). There, a joint NAWCAS–District 65 certification petition was denied on the ground that NAWCAS was disqualified by its conflict of interest. The Board properly recognized that NAWCAS might subordinate the interests of the employee traveling salemen (who composed the units in question) to those of the independent contractors. Similarly, NAWCAS, whose primary activity is the operation of trade shows, might oppose joint manufacturer-employee salesmen interests in manufacturer operated trade shows. Disqualification because of such conflicting interests is a necessary measure to assure good faith representation in collective bargaining.[5] Neither this principle nor the holding of Bambury is questioned in this proceeding.

NAWCAS and District 65 jointly conducted the Kaufmann organizing campaign during the pendency of Bambury

in 1969. Kaufmann's employee-salesmen were asked to sign two different representation cards—one designating "NAWCAS–District 65" as the bargaining agent (apparently following the Bambury pattern) and the other designating only "District 65." The stated reason for the use of two cards was to avoid "entanglements" at the Labor Board. J.A. 57.

On March 26, 1969, NAWCAS–District 65 jointly requested a meeting with management. On April 18, Kaufmann responded that in view of the Bambury proceeding, it doubted whether NAWCAS–District 65 could represent the unit. The joint campaign continued until May 22, when NAWCAS–District 65 withdrew its request for recognition. At the same time, District 65 individually sought recognition, relying on the alternate representation cards. This change in form was not accompanied by any change in substance. NAWCAS and District 65 remained affiliated, and NAWCAS officers still were capable of influencing if not controlling District 65.

In the subsequent certification proceeding, Kaufmann argued that the union's close ties with NAWCAS barred certification. The Board rejected the defense and ordered an election which District 65 won. Following Kaufmann's renewed refusal to bargain, the Board again rejected Kaufmann's arguments

---

4. J.A. 198. The Board has not explained the underlying reason for any continued formal affiliation between NAWCAS and District 65. There is reason to believe that NAWCAS originally hoped that recognition as a labor organization might exempt certain of its activities from scrutiny by the Federal Trade Commission. See National Association of Women's and Children's Apparel Salesmen, Inc., F.T.C. Docket No. 8691, CCH Trade Reg.Rep. ¶ 19,538 (Initial Order) (July 30, 1970); Bambury Fashions, Inc., 179 NLRB 447, 72 LRRM 1350 (1969). It is possible that NAWCAS' present affiliation with District 65 has the same or a related purpose. In any event, the potential threat to free competition inherent in arrangements between trade asso-

ciations and unions makes it imperative that the Board thoroughly understand the reason for such an alliance before certifying a union which is formally affiliated with an association already disqualified on conflict of interest grounds.

5. N. L. R. B. v. David Buttrick Co., 399 F.2d 505 (1st Cir. 1968), enforcing David Buttrick Co., 167 NLRB 438 (1967); N. L. R. B. v. David Buttrick Co., 361 F.2d 300 (1st Cir. 1966), remanding 154 NLRB 1468 (1965); Welfare & Pension Funds (United Bhd. of Carpenters), 178 NLRB 14, 71 LRRM 1610 (1969); General Teamsters, Local 249, 139 NLRB 605 (1962); Oregon Teamsters' Security Plan Office, 119 NLRB 207 (1957); Bausch & Lomb Optical Co., 108 NLRB 1555 (1954).

and ordered it to bargain with District 65. Kaufmann then petitioned for review in this court, and the Board cross petitioned for enforcement of its bargaining order.

The Board argues that District 65's established history as an independent labor union and its expressed intent to act independently in representing the bargaining unit are controlling in a certification proceeding. If these arguments were sufficient, potential conflicts of interest would seldom, if ever, be disqualifying.[6] The Board suggests, however, that ample protection is afforded by the availability of decertification. If District 65 "refuses to maintain an independent course in representing unit employees, or if in bargaining the Employer has grounds for believing that District 65 is acting as an agent for another organization, the Board, pursuant to its authority to police its certifications, may examine Petitioner's conduct when the Board's established procedures are appropriately invoked for such purpose." 187 NLRB No. 20 (J.A. 24).

■ Under the Board's suggested procedure, the employer would have to challenge the union in a decertification context with proof of actual misconduct by the bargaining representative. Postponing any protection against the risk that conflicting interests may infect the bargaining process until actual damage has been done is inconsistent with the Board's proper evaluation of the potential for harm evidenced by its decision in *Bambury*. Disqualification of a bargaining representative whose independence and loyalty are properly drawn into question should not await proof of actual misconduct. Rather, the Board must focus on the potential for such misconduct before the union is certified.

We agree with Judge Coffin's criticism of the test applied by the Board:

"The principles attaching to the concept of conflicts of interest in the fiduciary field generally, and also in the field of collective bargaining, look to the prevention and forestalling of conditions which are likely to divide loyalties. Were proof of union 'betrayal' required to trigger the application of sanctions, this constructive operation of the law would be largely nullified. We therefore take issue, not with the interpretation of the testimony, nor, of course, with the facts as revealed by the documentary evidence, but rather with the test or standard applied and the application of the undisputed facts to such standard." N.L. R.B. v. David Buttrick Co., 361 F.2d 300, 304–305 (1st Cir. 1966).

As the Board recognized in *Bambury*, "what disqualifies a union from acting . . . is the latent danger that it may bargain, not for the benefit of unit employees, but for the protection and enhancement of [other interests]." 179 NLRB at 451, 72 LRRM at 1354.

■ The record is replete with proof of the close relationship between NAWCAS and District 65. Mere assertions that they have acted or will act inindependently are not material even if believable; their continued close relationship in and of itself creates the danger that District 65 "may bargain, not for the benefit of unit employees, but for the protection and enhancement of" NAWCAS. *Ibid.* We conclude that the same conflict of interest which disqualified NAWCAS in *Bambury* also disqual-

---

6. District 65's established history as a labor union representing employees in entirely separate areas of the economy is not material to the question whether its affiliation with NAWCAS disqualifies it from representing Kaufmann's employees. The Board has not previously granted such deference to the fact that a union is well established. See, e. g., General Teamsters, Local 249, 139 NLRB 605 (1962); Oregon Teamsters' Security Plan Office, 119 NLRB 207 (1957); Bausch & Lomb Optical Co., 108 NLRB 1555 (1954). Likewise, if a party's expressed intent to act independently were adequate to avoid the conflict of interest objection, the objection would have little, if any, force.

ifies District 65, which owes loyalties both to NAWCAS and to the employees in the bargaining unit.

Employer's petition for review is granted; the Board's cross petition for enforcement is denied.