**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**and**

**Milk Wagon and Creamery Workers' Union, Local 380, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Intervenor,**

**v.**

**H. P. HOOD, INC., Respondent.**

**No. 73-1334.**

United States Court of Appeals, First Circuit.

Heard March 5, 1974.

Decided May 2, 1974.

Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., with whom Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Alan D. Cirker, and David S. Fishback, Washington, D. C., were on brief for petitioner.

John J. Delaney, Jr., Boston, Mass., with whom Murray S. Freeman and Nutter, McClennen & Fish, Boston, Mass., were on brief, for respondent.

ENFORCEMENT OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD

Before COFFIN, Chief Judge, and McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

This is the third occasion we have had in recent years to deal with the question whether intervenor, Milk Wagon and Creamery Workers' Union, Local 380, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the International), was disqualified from representing employees of a milk distributor, here H. P. Hood, Inc., because of an alleged conflict of interest arising from loans to a competing distributor, Whiting Milk Company, by a pension fund, the Central States, Southeast and Southwest Areas Pension Fund (the Fund), affiliated with the International.

In N. L. R. B. v. David Buttrick Co., 361 F.2d 300 (1st Cir. 1966) (*Buttrick I*), a milk distributor, Buttrick, had refused to bargain with Local 380 because of loans totaling $4,700,000 made by the Fund to Whiting. The Board had ruled that there was no definite or substantial connection between Local 380 and the loans by the Fund to Whiting, and that the Local was therefore not disqualified. We held that the salient focus was not the existence of improper conduct by the Local or the International but the potential—i. e., whether the innate danger posed by power and temptation to commit an abuse was proximate enough to poison the collective bargaining process. We remanded, suggesting that the Board develop guidelines governing the possible conflict of interest arising from the increasing investments by union pension funds in companies having collective bargaining agreements with affiliated locals.

The Board on remand reported that the creation of guidelines was not feasible at that time and that it found the possibility of any intervention by the International in the affairs of Local 380 too limited and remote to disqualify Local 380. We accepted that judgment and, following an argument advanced by the Board, added that in any event there was no showing that Whiting's financial situation had so deteriorated that the Fund could be said to have an equity-like interest and, therefore, the incentive of a stockholder to keep a closer watch

over his investment.[1] Buttrick was finally held to have violated the Act in refusing to bargain. N. L. R. B. v. David Buttrick Co., 399 F.2d 505 (1st Cir. 1968) (*Buttrick II*).

In the present case, the same Local 380, in May of 1968, after *Buttrick I* and before *Buttrick II*, sought to be certified as the bargaining representative of certain of Hood's Boston ice cream plant employees. After hearing had been held, *Buttrick II* was issued, and Hood sought to reopen the hearings to introduce evidence of conflict of interest arising from the Fund's loan to Whiting. The motion was denied without prejudice to Hood's right to raise the point by post-election objections. In October, 1968, Local 380 won the election by a small majority of the 149 votes cast. After objections were filed, hearings were held between November, 1968, and April, 1969. In July of 1969 the hearing officer recommended that the objections be overruled. Nine months later, on April 28, 1970, the Board also decided to overrule the objections and certify Local 380 as the bargaining representative.

Thirteen days later, on May 11, 1970, Hood declined to recognize Local 380 and a refusal-to-bargain charge was filed. Hood defended, inter alia, on the ground that the Fund's interest had become, in the lexicon of *Buttrick II*, "equity-like" and proffered new evidence. The Board denied the General Counsel's motion for summary judgment and another substantial set of hearings was held before an Administrative Law Judge.

The Administrative Law Judge rendered a decision, adopted by the Board, remarkable for its thorough examination of the financial condition of Whiting and the security behind the Fund's loan as of the date when Hood refused to bargain. He concluded, "that a prudent investor in the place of the Fund, as of May, 1970, would have considered itself to be the holder of an equity-like rather than a creditor-like interest; and, following *Buttrick*, I conclude that this would have created the temptation, likelihood, or incentive for the Fund to have affected, if it could affect, Local 380's bargaining to protect its loan to Whiting." This led him to the proposition that "Local 380, although twice removed [from the Fund], must be presumed to be in the position of being willing to cooperate with its affiliate to take steps to protect the Whiting-to-Fund obligation." But, he added, the presumption is rebuttable.

He went on to conclude that the presumption had been completely rebutted and that Hood had not, finally, met "its considerable burden to show a clear and present danger of conflict." The factors which he considered were: the fact that Local 380 was twice removed from the Fund; the absence of evidence of past domination by the Fund over the International or by either over Local 380; the limited powers of the International; the absence of any evidence of intervention in any negotiations with Whiting prior to May 11, 1970; the absence of any evidence of intervention at the most recent hearing concerning post-1970 events; the testimony of Local 380's executive officer concerning absence of any pressure on or temptation by Local 380 to protect the loan in negotiations with Whiting prior to May 11, 1970. He then stressed that Whiting had been union dominated and that Local 380 had been relentless in its bargaining in the face of losses, of threatened shutdown, and finally, "in the face of the realization of that threat", and did not, on May 11, 1970 or thereafter suffer from a conflict of interests. The result followed that Hood, in refusing to recognize and bargain with Local 380 on and after May

---

1. The Board in its brief had argued, "Moreover, the nature of the Fund's investment in Whiting is not like a stock purchase that would give the Fund (on behalf of its employee beneficiaries) a day-to-day interest in every rise or fall of Whiting's business . . . . So long as Whiting continues to meet its fixed monthly payments, the Fund has no basis for concern with its operations, and has indicated no concern . . . ."

11, 1970, was in violation of Section 8(a)(5).

■ There are three preliminary questions. Local 380 argues that the Board erred in adopting the Administrative Law Judge's conclusion that Hood and Whiting were in competition. Whiting was engaged almost wholly in the distribution of milk. Its ice cream business was minimal. The Hood target of Local 380, on the other hand, was its ice cream division. While these two economic units were largely in different fields, the Administrative Law Judge reasoned that Local 380, acting in Whiting's behalf, could legally have picketed Hood's ice cream division, and could conceivably have extended the picketing to Hood's milk plant. While perhaps a remote contingency, this is the kind of decision which lies within the expertise of the Board—similar to certification of a particular group of employees for bargaining purposes. We do not disturb it.

■ The second attack, also made by Local 380, is that May 11, 1970 was not the critical date at which the refusal to bargain should be judged. The Union argues that the critical date was when the hearings closed, March 12, 1973. The Board cannot realistically constantly adjust its adjudications to constantly changing conditions. The initial refusal to bargain occurred on May 11, 1970. That is the time when Hood's decision was made and the time as of which its legality should be judged.[2]

■ A third preliminary issue, raised by Hood, is whether the certification of Local 380 is invalid. Hood argues that the certification order of April 28, 1970 was "stillborn" because later evidence was introduced which convinced the Administrative Law Judge that, as of May 11, 1970, Whiting was in such straits

that the Fund had an equity-like interest in Whiting. Hood rather quickly asserts the point without either demonstrating the logical imperative or citing authority. We grant that by the time the Board issued the certification, Whiting was in extremis. We also grant that if the information later developed about Whiting's condition as of that time had been available to the Board, it might not have certified the Local pending further scrutiny. But the fact is that the Board acted on the basis of the record which had been formed in 1969. Had it acted within two or three months of the hearing and report, the argument would in all likelihood not have been made. The coincidence of the Board's decision with the date of the later assessment of Whiting's financial condition cannot impeach the decision. There has to be some finality of decision. And just as we reject the Union's claim that the critical date is advanced to March of 1973, so do we reject Hood's claim that the Board's decision, based on its preexisting record, should be voided because it did not take into account the conditions existing at the time of its issuance.

■ This brings us to Hood's major argument that the Board (and the Administrative Law Judge) erred in finding that the "presumption" that Local 380 was "in the position of being willing to cooperate with [the Fund] to take steps to protect the Whiting-to-Fund obligation" was rebutted.[3] Hood claims first that the only meaningful rebuttal would be proof that the Local did not favor Whiting over Hood in contemporaneous bargaining with both. This, of course, postulates a state of affairs which could not come about until Hood enters into a bargaining relationship with Local 380, a relationship which

---

2. Local 380 also argues that the Board was incorrect in finding that the Fund had an "equity-like interest" in Whiting as of May 1970. But we think this finding of the Board is supported by substantial evidence.

3. Although not expressly advanced in its brief, Hood seems to imply throughout its argument on this point that a subjective

standard should apply. In view of the fact that no punitive sanctions are involved and in view of the practical problems of proof which inevitably would inhere in such a standard, we believe that a subjective standard—that is, a requirement of finding of "bad faith"—is not the proper standard to apply to this kind of case.

would have to hinge on prior effective rebuttal of the presumption—a perfect circle of an argument. Hood then argues that while Local 380's bargaining efforts prior to the critical date of May 11, 1970 may not have reflected any interference from the Fund, they do not rise to the level of affirmative evidence of aggressiveness which could overcome the presumption. This leaves evidence of Local 380's resistance to Whiting's proposals in late 1972 and 1973 as the only · positive rebuttal evidence. Hood concludes that since the propriety of its refusal to bargain is being adjudged as. of May 11, 1970, it is patent error for the Board to rely on later events.

These arguments, scrutinizing the bargaining record for "positive" evidence of union aggressiveness, not merely lack of domination and interference, point up, in our minds, the unsuitability of a presumption-rebuttal analysis in a situation presenting this kind of conflict of interest potential. Its rigorous application would require that, whenever a company, owing money to a union pension fund, finds itself in serious financial difficulty, its employees' union must, if it wishes also to represent the employees of a competitor, increase its aggressiveness and intransigence. This concept of presumption and rebuttal we find too wooden and artificial to fit the wide variety of conflict situations which can arise.

In this case, for example, the powers of the International Union are limited; the possibility of its intervening in Local bargaining is remote; the maximum effect of any default by Whiting on the assets of the Fund are, relatively, miniscule;[4] and the competitive impact of Hood's operations on Whiting's, or vice versa, is at best marginal. The fact that, as of May 11, 1970, Whiting's financial situation had deteriorated to the point where the Fund's interest approximated that of a stockholder's is clearly a

signal that the continued independence of Local 380 merits close scrutiny to see if the danger (created by "sufficient power and temptation") is "proximate enough", *Buttrick I*, 361 F.2d at 307, or "clear and present", *Buttrick II*, 399 F. 2d at 507. But whether the danger of a local's subordinating its duty to its members to the financial interest of a fund is so proximate as to poison the bargaining relationship is a question which can be answered by more than one kind of data.

Here, in addition to the factors we have cited which portray the incentive or temptation, though real, as being circumscribed by other limiting realities, the Board had before it a record of bargaining between 1967 and May 11, 1970 which it found free of any loan-protection interference. The testimony of the executive officer of Local 380 that loan protection or temptation did not exist during this period was accepted by the Administrative Law Judge. During this period, both Whiting and Local 380 made concessions, the company realizing certain economies by having fewer drivers servicing larger routes, the Union realizing higher pay for the reduced work force. Hood characterizes the bargaining as reflecting "amiable acquiescence" on the part of Local 380 and minimizes the significance of the wage increases granted.

The Board disagreed. It concluded that Hood had not met its "considerable burden to show a clear and present danger of conflict" and that Local 380 did not, as of the critical date of May 11, 1970, suffer from a conflict of interests. The assessment of the force and motivation of union efforts in bargaining with its members' ailing employer is the kind of judgment which the Board is peculiarly qualified to make. Its expertise, assuming the presence of substantial evidence, must control the result. We have no difficulty in holding that the Board's conclusion was supported by

---

4. The Board found that as of May, 1970, the balance of the loan owed to the Fund by Whiting stood at slightly over $3 million, App. Vol. I at 40. At about the same time

the reported assets of the Fund amounted to over $800 million, Charging Party's Exhibit No. 4, App. Vol. I at 238, 240.

substantial evidence. In so holding, we confine our review to the evidence and the Board's holding as to the status of Local 380 on the critical date; its holding as to Local 380's freedom from conflict of interest "thereafter" is irrelevant. The evidence of bargaining before the critical date was itself substantial, without considering any later evidence.

The Board, in reaching its decision, may well have invoked a higher standard of proof than necessary in requiring enough evidence to rebut the presumption of Local 380's willingness to alter its collective bargaining to protect the Fund's loan. In saying this, we do not imply that we are substituting our own rationale for that of the Board, in violation of S.E.C. v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943). It is not that we have made "a determination of policy or judgment which the agency alone is authorized to make", *id.* at 88, 63 S.Ct. at 459, or that we consider the Board's grounds "inadequate or improper", S.E.C. v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1760, 91 L. Ed. 1995 (1947). Our observation is merely that in reaching its ground for judgment, in compliance with the prior standards of *Buttrick I* and *II*, it erected some unnecessary hurdles. A remand in such a situation would be a venture in supererogation. We therefore affirm the Board's conclusion that Hood's refusal to bargain was an unfair labor practice.

For the present, however, we shall not enforce the order. In its brief to us the Board suggested that, if we should find that Hood was not obliged to recognize Local 380 because of a disqualification that is now removed, we remand the case so that the Board could deal with the question whether a bargaining order should be entered on the basis of an election which was held approximately five and one half years ago, on October 22, 1968. This delay, unlike that in many cases, cannot be attributed to the tactics of Hood. Most of it stemmed from the various proceedings and the ensuing time for deliberation and decision. Even though we have upheld the Board, we think that under the circumstances the Board should have the opportunity prior to outright enforcement of the bargaining order to consider whether entry of the order remains appropriate. While this means an additional lapse of time in these already hoary proceedings, we think fairness will be better served than by immediately locking the parties into a lengthy relationship on the basis of ancient events.[5]

We therefore withhold entry of judgment enforcing the Board's order for sixty days and remand the case to the Board for such further consideration and action as it deems advisable. Should the Board within this period determine that the order should be enforced, it should so report. Should other action be taken so that the order should not issue, it should so advise.

---

5. We find support for the approach we take in Clark's Gamble Corp. v. N. L. R. B., 407 F.2d 199 (6th Cir.), remanded, 396 U.S. 23, 90 S.Ct. 197, 24 L.Ed.2d 143 (1969), on remand, 422 F.2d 845, cert. denied, 400 U.S. 868, 91 S.Ct. 100, 27 L.Ed.2d 108 (1970).