HIGHLAND HOSPITAL, Petitioner, Cross–Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent, Cross–Petitioner,

New York State Nurses Association, Intervenor.

Nos. 183, 323, Dockets 88–4081, 88–4093.

United States Court of Appeals, Second Circuit.

Argued Oct. 3, 1988.
Decided Nov. 9, 1988.

Eric S. Lamm, New York City (Howard G. Estock, Brian J. Clark, Clifton Budd Burke & DeMaria, New York City, on the brief), for petitioner, cross-respondent.

Richard A. Cohen, N.L.R.B., Washington, D.C. (Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Assoc. Gen. Counsel, Aileen A. Armstrong, Deputy Assoc. Gen. Counsel, Perlstein, Supervisory Atty., N.L.R.B., Washington, D.C., on the brief), for respondent, cross-petitioner.

Richard J. Silber, Albany, N.Y. (Harder, Silber and Gillen, Albany, N.Y., on the brief), for intervenor.

Before FEINBERG, Chief Judge, NEWMAN and GARTH,* Circuit Judges.

JON O. NEWMAN, Circuit Judge:

Highland Hospital ("Highland") petitions for review of an order of the National Labor Relations Board ("NLRB") requiring Highland to sign and execute an agreed-upon collective bargaining agreement with the New York State Nurses Association ("NYSNA"), the certified bargaining representative of non-supervisory registered nurses employed at the hospital. Highland asserts that NYSNA is an illegal bargaining representative under section 8(a)(2) of the National Labor Relations Act, 29 U.S.C. § 158(a)(2) (1982), because supervisory nurses participate in NYSNA's governing structure.[1]

This marks the second time that NYSNA has been before this Court because of questions as to the organization's eligibility to be a legal bargaining representative. In an earlier case, *NLRB v. North Shore University Hospital*, 724 F.2d 269 (2d Cir.1983) (hereafter *North Shore I*), we expressed concern about various features of NYSNA's general organizational structure that suggested imminent danger of supervisory influence on employee collective bargaining. The record in this case provides substantial evidence that NYSNA has effectively changed its structure to allay the concerns expressed in *North Shore I* and has insulated its collective bargaining activities from supervisor influence. Accordingly, we deny Highland's petition and grant the NLRB's cross-petition for enforcement of its order.

## Background

NYSNA is a multi-purpose professional organization whose membership is open to all licensed registered nurses—supervisory and non-supervisory—in New York State. It operates a variety of programs related to nursing care. One of these programs, the Economic and General Welfare Program ("EGW"), includes a collective bargaining arm for member non-supervisory nurses. The collective bargaining arm of a particular NYSNA unit is a Council of Nursing Practitioners ("CNP"). Membership in a CNP is restricted to non-supervisory nurses employed at the particular health facility involved in collective bargaining negotiations. Ultimate bargaining authority rests with the CNP. The CNP is assisted by staff professionals employed by the EGW

---

* The Honorable Leonard I. Garth of the Third Circuit, sitting by designation.

1. Section 8(a)(2) restricts agents of the employer from interfering with or dominating employees' bargaining representative in order to ensure arm's length collective bargaining. It provides in pertinent part:

> (a) It shall be an unfair labor practice for an employer—
> (2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it. . . .

29 U.S.C. § 158(a)(2) (1982).

program. The EGW program staff reports to the program director who, in turn, reports to the NYSNA executive director. The executive director determines what information, if any, is transmitted to the thirteen-member board of directors—NYSNA's ultimate governing body, which is elected by the full NYSNA membership.

A collective bargaining agreement between Highland and NYSNA was signed in 1983 and lasted until April 1984. Negotiations for a successor contract agreement commenced in the spring of 1984 and continued into 1985. A tentative agreement was reached in February 1985. In March 1985, after the remand in *North Shore I*, the NLRB found NYSNA to be an unlawful bargaining representative, in light of this Court's *North Shore I* analysis. *North Shore University Hospital*, 274 N.L.R.B. 1289 (1985) (hereafter *North Shore II*).

In the wake of *North Shore I* and *North Shore II*, Highland filed a motion with the NLRB to revoke NYSNA's certification as a bargaining representative. On June 10, 1985, Highland withdrew its recognition of NYSNA and refused to execute a new collective bargaining agreement. NYSNA subsequently filed an unfair labor practice complaint alleging refusal to bargain, and the NLRB consolidated that complaint with the hospital's decertification motion. The issue before the NLRB in the consolidated proceeding was whether changes that had occurred in NYSNA's structure since *North Shore II* sufficed to satisfy the standards of section 8(a)(2). For the reasons set forth below, we believe that the NLRB had ample evidence upon which to conclude that NYSNA is now a legal bargaining representative.

### Discussion

As this Court noted in *North Shore I*, the structure of a multi-professional organization, such as NYSNA, brings into potential conflict two basic policies promoted by the National Labor Relations Act. On one hand, the Act assures employees freedom of choice in selecting a bargaining representative. *See NLRB v. Jones &*

*Laughlin Steel Corp.*, 331 U.S. 416, 425–26, 67 S.Ct. 1274, 1279–80, 91 L.Ed. 1575 (1947). On the other hand, the Act also seeks to prevent agents of the employer from dominating or interfering with the activities of employees' bargaining representatives. *See NLRB v. Link–Belt Co.*, 311 U.S. 584, 588, 61 S.Ct. 358, 361, 85 L.Ed. 368 (1941). These ostensibly complementary policies may come into conflict in a multi-professional organization where supervisors participate actively in the group's governing structure. *See North Shore I, supra*, 724 F.2d at 272.

The NLRB's test for illegal supervisor influence is drawn from its ruling in *Sierra Vista Hospital, Inc.*, 241 N.L.R.B. 631 (1979). In challenging NYSNA's certification as a bargaining representative, Highland must show that " 'danger of a conflict of interest interfering with the collective bargaining process is clear and present.' " *Id.* at 633 (quoting *NLRB v. David Buttrick Co.*, 399 F.2d 505, 507 (1st Cir.1968)). In *North Shore I*, we reaffirmed the *Sierra Vista* test but held that the inquiry as to a conflict of interest in a multi-professional organization should not be limited to inspection of actual bargaining units for evidence of demonstrated interference. Rather, the NLRB's inquiry "must extend to all relevant circumstances, including the governing structure and actual practice of the organization seeking certification as a bargaining representative so far as participation by supervisors is concerned." *North Shore I, supra*, 724 F.2d at 273.

In *North Shore I*, this Court expressed concern about several features of NYSNA's general organizational structure: (1) the board of directors included supervisors; (2) the nominating committee, which has considerable influence in selecting NYSNA officers, was chaired by a North Shore Hospital supervisor; (3) the EGW program staff, who advise the CNP on collective bargaining matters, served at the pleasure of the board of directors; (4) an EGW advisory council and a task force on NYSNA's no-strike policy included supervisors as members; (5) supervisors spoke out about union matters at membership meetings; and (6) there appeared to be resist-

ance on NYSNA's part to cooperating with employers to insure that section 8(a)(2) was not violated. We did not determine that each of these aspects of the prior arrangement necessarily established a violation of section 8(a)(2) but only that the combination of factors then present raised sufficient doubts to warrant further NLRB consideration. We remanded the case to the NLRB for reconsideration of its grant of NYSNA's certification consistent with this broader inquiry.

Since our ruling in *North Shore I*, there have been significant changes in NYSNA's governing structure, as well as clarifications in the record upon which this Court based its prior decision. Although supervisors (none of whom works at Highland) continue to sit on the NYSNA board of directors, the evidence is now clear that the board of directors is not involved in, nor can it interfere with, collective bargaining matters. It does not vote on collective bargaining agreements, and it does not have authority to force a CNP to approve an agreement. The board of directors also has no direct contact with the EGW program. The executive director, who is the only one to report to the board about labor activities, does not inform the board on the particulars of organizing, bargaining, or the handling of grievances.

The nominating committee, which exercises considerable influence in selecting NYSNA officers and committees, does not include any Highland supervisors. Furthermore, NYSNA has instituted a self-nomination procedure so that any member bypassed by the nominating committee may still run.

The EGW program staff serves at the pleasure of the executive director and has no direct contact with the board of directors. The EGW advisory council, which apparently never had any connection to collective bargaining activities, has in any case been abolished. The no-strike task force has been abolished, and participation in task forces relating to labor activities is now limited to those eligible to be in a CNP—thus excluding all supervisors.

Highland emphasizes that at meetings of NYSNA's general membership each supervisor has a vote and voice equal to that of a non-supervisor. However, we are not prepared to hold that this general participatory right, which is an inherent feature of multi-professional organizations, renders NYSNA an illegal bargaining representative. *See North Shore I, supra,* 724 F.2d at 275; *NLRB v. Walker County Medical Center, Inc.,* 722 F.2d 1535, 1541 (11th Cir.1984). NYSNA has enacted internal regulations to prevent supervisors from voting on collective bargaining agreements or becoming involved in bargaining activities. This restriction on supervisor participation is a significant element in NYSNA's overall effort to comply with section 8(a)(2) of the National Labor Relations Act.

Highland also argues that NYSNA had failed to modify its organizational structure at the time that Highland withdrew recognition on June 10, 1985. Our review of the record satisfies us that while some minor modifications to NYSNA's structure took place after June 10, 1985, the major substantive structural changes, which differentiate this case from *North Shore I*, took place prior to that date.

Applying the substantial evidence standard to the NLRB's determination that NYSNA is a legal bargaining representative under section 8(a)(2), we are satisfied that the Board has properly applied the *Sierra Vista* test within the general framework suggested by *North Shore I*. Accordingly, Highland's petition to set aside the NLRB's order is denied, and the NLRB's cross-petition for enforcement of its order is granted.