948 F.2d 1294
 138 L.R.R.M. (BNA) 2976
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
CUSTOMIZED TRANSPORTATION, INC., Respondent,
International Union, Uaw, Intervenor.
 No. 90-9524.
 United States Court of Appeals, Tenth Circuit.
 Nov. 12, 1991.
 
 Before STEPHEN H. ANDERSON, BALDOCK and EBEL, Circuit Judges.
 ORDER AND JUDGMENT*
 EBEL, Circuit Judge.
 
 
 1
 This is an application by the National Labor Relations Board ("NLRB") to enforce an order entered against Customized Transportation, Inc. ("CTI") as a result of an unfair labor practice arising out of CTI's refusal to bargain with the International Union, UAW ("UAW"). UAW had previously been certified as the bargaining representative for the employees of CTI. CTI's defense to the unfair labor practice charge was that the UAW was not a suitable bargaining representative for its employees because the UAW also represents the employees of General Motors ("GM"). CTI performs outsourcing work for General Motors. CTI argued that the duty that the UAW owed to its GM members conflicted with the duty that it owed to its CTI members because work subcontracted to CTI was work that might otherwise have been done in-house by GM employees. We affirm the NLRB decision and order that it be enforced.
 
 
 2
 The controversy between CTI and the UAW began when the UAW filed a petition requesting that it be placed on a ballot for approval as the bargaining representative of CTI's employees. CTI objected to the election on the grounds that the UAW's interest in preserving work for its GM members would conflict with the duty of loyalty that it would owe to its CTI members. CTI argued that the UAW might be motivated to make untenable demands upon CTI in order to drive it out of business so that the work could be preserved for the GM employees. In support of its argument, CTI presented a hand bill that had been distributed in support of UAW Region 5 Director Jerry Tucker, who was running for reelection. That hand bill, distributed to GM employees, represented that Jerry Tucker's position was the following: "[c]lear and firm contractual restrictions opposing any and all subcontracting or outsourcing of work that can be done by our Skilled Trades at Fairfax."[1] The NLRB found that "there is no inherent conflict of interest in a labor organization's representing the representatives of, respectively, both a given employer and another employer with which it has a subcontract. There is no competitive business state between the employer and the petitioner [UAW]." It further found that the terse rhetoric in the handbill was not shown to represent the position of the UAW as an institution. Accordingly, it ordered an election on the UAW's petition to represent CTI's employees. The UAW narrowly won that election, and on June 15, 1989, the NLRB certified the UAW as the collective bargaining representative for CTI's employees.
 
 
 3
 When the UAW requested CTI to begin bargaining with it, CTI refused. It again raised the specter of a conflict of interest on behalf of the UAW. Before CTI would agree to bargain with the UAW, it asked for "written assurances that the International Union [UAW] will take no action during the course of any initial collective bargaining agreement between CTI and your organization which would undermine CTI's position and viability as an 'outsource' of General Motors and its various subsidiaries." The UAW refused to give such written assurances, and, instead, filed an unfair labor practice charge with the Regional Director of the NLRB, claiming that CTI has refused to bargain with it in violation of the National Labor Relations Act. CTI renewed its defense that it believed that the UAW had a conflict of interest in representing both GM employees and CTI employees. The NLRB again rejected that argument, holding that all issues raised by CTI were or could have been litigated in the prior representation proceeding. Because CTI did not offer any newly-discovered and previously-unavailable evidence, nor did it allege any special circumstances, the Board reaffirmed its prior decision made in the representation proceeding that the UAW was an appropriate bargaining agent. Accordingly, it granted UAW's motion for summary judgment and entered an order finding that CTI had engaged in an unfair labor practice. The NLRB ordered CTI to commence bargaining with the UAW. On May 7, 1990, the NLRB filed an Application for Enforcement of its Order with this court.
 
 
 4
 CTI raises two issues in opposition to the NLRB Application for Enforcement of its Order: First, that the NLRB erred in certifying the UAW as the collective bargaining representative for CTI's employees because of the alleged conflict of interest with UAW's representation of GM employees; and, second, that the NLRB erred in not requiring the UAW to give written assurances to CTI that it would take no actions to undermine CTI's position as an outsource of GM work. These two issues are intertwined, and CTI's claim that the UAW is obligated to accede to its request for assurances is really only a thinly disguised version of CTI's claim that the UAW should never have been certified as the bargaining representative in the first instance. Thus, we treat both issues together.[2]
 
 
 5
 The employees' right to be represented by a bargaining representative of their choice is fundamental. NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 33 (1937); NLRB v. David Buttrick Co., 399 F.2d 505, 507 (1st Cir.1968) ("There is a strong public policy favoring the free choice of a bargaining agent by employees."). Nevertheless, where the employees' bargaining representative has a conflict of interest which would undermine its ability fairly to represent the employees, the employer is justified in refusing to bargain with the representative. R & M Kaufmann v. NLRB, 471 F.2d 301, 303 (7th Cir.1972), cert. denied, 411 U.S. 906 (1973). However, the possibility of a conflict must be proximate and substantial rather than remote and speculative. NLRB v. David Buttrick Co., 399 F.2d at 507-08; see Universal Fuels, Inc., 270 NLRB 538 (1984).
 
 
 6
 Here, there is insufficient evidence of a conflict of interest by the UAW to cause us to overturn the NLRB certification of the UAW. CTI does not argue for a per se rule that a union can never represent the employees of both a general manufacturer and a company that performs outsourcing work for the general manufacturer. Cf. Pueblo Gas & Fuel Co. v. NLRB, 118 F.2d 304, 308 (10th Cir.1941) (union may represent employees of rival industries).
 
 
 7
 Instead, CTI simply says that the evidence in this case shows an unacceptable conflict because the UAW is committed to eliminating outsourcing jobs upon which CTI depends. CTI relies almost exclusively on the handbill supporting the candidacy of Jerry Tucker for reelection as a Regional Director of the UAW. As noted above, that handbill advocates a restrictive approach toward outsourcing of work performed at GM's Fairfax plant. However, as the NLRB observed, there was no evidence that the position taken in the handbill was ever the official position of the UAW.[3] We also note that, at oral argument, the UAW's counsel acknowledged that if the UAW took a position to harm CTI in order to preserve work for its GM employees at the Fairfax plant, that would violate its duty of loyalty to its CTI members:
 
 
 8
 COURT: I just want to know whether you are going to expose your clients to a breach of fair representation. [If the UAW took a position against GM's continuing outsourcing of work to CTI while negotiating on behalf of either CTI's employees or GM's Fairfax plant employees.]
 
 
 9
 COUNSEL: I am. The answer to that question is yes.
 
 
 10
 COURT: And that's on both sides of the equation?
 
 
 11
 COUNSEL: That is correct.
 
 
 12
 COURT: If they have an ulterior motive in bargaining on the customized side, they open themselves up to a suit? If they have a motive on bargaining on the Fairfax plant side to destroy customized, they also open themselves up to a suit?
 
 
 13
 COUNSEL: In my view that is inconsistent with the Union's duty of fair representation. That is bad faith, arbitrary, or irrational conduct by the Union, and it would be susceptible to our employees on the facts as you stated them.[4]
 
 
 14
 The NLRB's decision that CTI's refusal to bargain with the UAW constitutes an unfair labor practice is hereby AFFIRMED. We ORDER that the NLRB's order directing CTI to bargain with the International Union, UAW, be ENFORCED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The reference to Fairfax is to GM's Fairfax plant, where it makes Pontiac Grand Prixs. CTI manufactured the interior door and quarter trim panels for the Grand Prix cars manufactured at the Fairfax plant
 
 
 [2]
 We will enforce an order of the NLRB if the Board correctly applied the law and if its findings are supported by substantial evidence in the record as a whole. Glaziers Local Union 558 v. NLRB, 787 F.2d 1406, 1411 (10th Cir.1986)
 
 
 [3]
 In its reply brief, CTI reproduced a recent UAW newsletter in which the UAW announced that it had reached an agreement with GM substantially to limit outsourcing. However, as there is no showing that this article was part of the record below, we decline to consider it on appeal. We also decline to consider the fact that Jerry Tucker apparently lost his election and no longer is an official of the UAW because it does not appear that fact was part of the record below
 
 
 [4]
 We do not decide here how extensive may be UAW's duty of loyalty to its CTI employees, nor whether it would, as a matter of law, extend to its conduct which acting as a bargaining agent for GM employees. Any discussion of such issues should wait a specific factual context