**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**WALKER COUNTY MEDICAL CENTER, INC., Respondent.**

No. 83–7003.

United States Court of Appeals, Eleventh Circuit.

Jan. 16, 1984.

Rehearing and Rehearing En Banc Denied Feb. 14, 1984.

Elliott Moore, Deputy Assoc. General Counsel, N.L.R.B., Washington, D.C., for petitioner.

D. Frank Davis, Thomas, Taliferro, Foreman, Burr & Murray, Maura A. Reardon, Birmingham, Ala., for respondent.

Before FAY and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is an application by the National Labor Relations Board ("NLRB") to enforce its order against the Walker County Medical Center ("Medical Center"), which refused to negotiate with the bargaining unit of registered nurses certified by the NLRB's Regional Director as the proper unit for bargaining purposes. For the reasons stated herein, we enforce the order.

## I. BACKGROUND AND ISSUES

On March 6, 1981, the Alabama State Nurses Association ("ASNA") petitioned the NLRB seeking an election at the Medical Center in a unit composed of "all professional Registered Nurses." The Board's Regional Director ordered a hearing, which was held over four days in March and April, 1981. The primary issues at the hearing were (1) whether ASNA is a labor organization within the meaning of the National Labor Relations Act; (2) whether there is a conflict of interest between ASNA, whose Board of Directors includes some supervisory and management personnel, and the interests of the registered nurses at the Medical Center; (3) whether there is a conflict of interest between the officers of the local unit and the nurses' representational concerns; (4) whether a unit of nonsupervisory professional registered nurses is an appropriate unit for purposes of collective bargaining, or whether the unit should consist of all nonsupervisory professionals at the Medical Center; and (5) whether assistant unit coordinators and charge nurses are supervisors within the meaning of the NLRA. The Regional Director resolved all of these issues against the Medical Center and directed an election to determine whether the unit employees desired to be represented by ASNA for collective bargaining purposes. A majority of the unit employees voted in favor of ASNA, and on June 10, 1981, the Regional Director certified ASNA as the exclusive representative of the registered nurses' unit.

Following the Regional Director's certification of ASNA, the Medical Center advised ASNA that it would refuse to meet with it for purposes of collective bargaining. ASNA then filed an unfair labor practice charge with the Board. On March 12, 1982, the Board granted summary judgment on ASNA's claim and ordered the Medical Center to bargain with ASNA. On January 5, 1983, the Board filed its application in this Court to enforce its March 12, 1982 order.

The Medical Center resists enforcement of the Board's order on three grounds. First, the Medical Center alleges that in approving a bargaining unit consisting only of registered nurses, the Board failed to give sufficient consideration to the congressional admonition against proliferation of bargaining units in the health care industry. Second, the Medical Center claims that because some nurses who are supervisors of other institutions participate in the affairs of ASNA, there is a danger of conflicts of interest between ASNA and the registered nurses at the Medical Center such that ASNA cannot properly serve as a collective bargaining representative. Third, the Medical Center contests the Board's finding that assistant unit coordinators and charge nurses at the Medical Center are not supervisors within the meaning of the NLRA.

Our review of these issues is narrow. With regard to the first issue we look to whether the Board acted within its discretion in determining that the nurses unit is an appropriate bargaining unit. *See NLRB v. Erie Resistor Corp.,* 373 U.S. 221, 235–37, 83 S.Ct. 1139, 1149–50, 10 L.Ed.2d 308 (1963). As to the second and third issues, we must accept the Board's findings if they are supported by substantial evidence in the record. *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951).

## II. DISCUSSION

### A. *Did The Board Fail To Give Due Consideration To The Policy of Nonproliferation of Bargaining Units in Health Care Facilities?*

In 1974, Congress amended the National Labor Relations Act to allow employees of nonprofit hospitals to organize and bargain collectively with their employees.[1] Congress made clear in the legislative history to the 1974 amendments, however, its concern that due to the public interest in uninterrupted hospital service, the NLRB should strive to prevent proliferation of bargaining units in the health care field. Congress apparently was concerned that the large number of specializations that had developed in the health care field could lead to numerous small bargaining units, each of which might threaten a hospital's vital operations in the event of a labor dispute.[2] The reports of both the Senate and the House of Representatives explained in identical terms Congress's directive to the Board: "Due consideration should be given by the Board to preventing proliferation of bargaining units in the health care industry." S.Rep. No. 93–766, 93d Cong., 2d Sess. (1974); 1974 U.S.Code Cong. & Ad. News 3946, 3950; H.R.Rep. No. 93–1051, 93d Cong., 2d Sess. 6–7 (1974).

■ The issue before us here is whether the Regional Director, acting as the Board's representative, duly considered the nonproliferation policy expressed by Congress.[3] Although this case represents the first time that the Eleventh Circuit has faced the nonproliferation issue, other circuits have

been struggling with it for some time, often denying enforcement of the Board's orders for failure to give due consideration to the congressional directive against undue proliferation. For example, in *St. Vincent's Hospital v. NLRB*, 567 F.2d 588 (3d Cir. 1977), the court refused to enforce a Board order certifying a group of four boiler operators at a hospital as an appropriate bargaining unit because the Board failed to consider the nonproliferation directive. Similarly, in *Long Island Jewish-Hillside Medical Center v. NLRB*, 685 F.2d 29 (2d Cir.1982), the court refused to enforce a Board order certifying separate units of registered nurses at each of the Hospital's three major divisions, because the order would lead to undue proliferation. *See also NLRB v. Frederick Memorial Hospital*, 691 F.2d 191 (4th Cir.1982); *NLRB v. HMO Int'l/California Medical Group Health Plan, Inc.*, 678 F.2d 806 (9th Cir.1982); *St. Anthony Hospital Systems v. NLRB*, 655 F.2d 1028 (10th Cir.1981), *rehearing en banc*, 688 F.2d 697 (10th Cir.), *cert. dismissed,* —— U.S. ——, 103 S.Ct. 433, 74 L.Ed.2d 522 (1982); *Beth Israel Hospital & Geriatric Center v. NLRB*, 677 F.2d 1343 (10th Cir. 1981); *rehearing en banc*, 688 F.2d 697 (10th Cir.), *cert. dismissed,* —— U.S. ——, 103 S.Ct. 433, 74 L.Ed.2d 522 (1982); *Presbyterian/St. Luke's Medical Center v. NLRB*, 653 F.2d 450 (10th Cir.1981), *cert. dismissed,* —— U.S. ——, 103 S.Ct. 433, 74 L.Ed.2d 522 (1982); *Allegheny General Hospital v. NLRB*, 608 F.2d 965 (3d Cir.1979); *NLRB v. Mercy Hospital Ass'n*, 606 F.2d 22 (2d Cir.1979), *cert. denied*, 445 U.S. 971, 100

1. Prior to 1974 the rights of employees of nonprofit hospitals to organize and bargain collectively were controlled by state law.

2. For a general discussion of the legislative history surrounding the 1974 amendments, particularly the nonproliferation directive, *see St. Vincent's Hospital v. NLRB*, 567 F.2d 588, 589–91 (3d Cir.1977).

3. We have grave doubts over whether this issue is properly before us, because the Medical Center failed to raise it with any specificity before the Regional Director. The Medical Center's brief before the Regional Director raised the other issues discussed in this enforcement proceeding, and discussed them in

depth, but with respect to the proliferation issue the Medical Center merely "preserve[d] its position that a separate RN unit excluding other professionals is inappropriate," without stating why the unit was inappropriate. Additionally, in its request that the Board review the Regional Director's decision, the Medical Center's sole reference to the appropriateness of a nurses only bargaining unit was a simple conclusory sentence that the unit determination "violates the principle of nonproliferation of bargaining units in the health care industry."

Despite our doubts about the appropriateness of the way in which the Medical Center has raised this issue, we review the issue on its merits because we find the Medical Center's position to be unsupportable.

S.Ct. 1665, 64 L.Ed.2d 248 (1980); *NLRB v. St. Francis Hospital of Lynwood,* 601 F.2d 404 (9th Cir.1979); *NLRB v. West Suburban Hospital,* 570 F.2d 213 (7th Cir.1978). A general rule derived from the above cited cases is that the Board must consider Congress's nonproliferation directive and discuss how the Board's action in a particular case comports with that directive. "Mere lip-service mention of the Congressional admonition" is insufficient. *NLRB v. West Suburban Hospital,* 570 F.2d 213, 216 (7th Cir.1978).

█ The Medical Center contends that in this case the Board failed even to mention or discuss the proliferation issue in determining the appropriateness of the registered nurses unit. We disagree. The Regional Director stated in his findings of fact that the registered nurses at the Medical Center shared a community of interest with each other, which they did not share with the other professional employees whom the Medical Center sought to include in the unit. The Regional Director then stated that he found the nurses' unit to be "appropriate," citing *Newton-Wellesley Hospital,*

250 NLRB 409 (1980). In *Newton-Wellesley,* the Board, recognizing the need to limit the number of health care bargaining units, determined that units of registered nurses are among the limited number of units that are appropriate if the nurses in fact have a community of interest separate and distinct from other employees, and no other factors militate against a nurses only unit. *Compare Mt. Airy Psychiatric Center,* 253 NLRB 1003, 1006 (1981) (separate registered nurse unit inappropriate when some RNs perform significant patient care functions interchangeably with other professionals and the remaining professionals are too few to permit their exclusion from the unit). We hold that the Regional Director's citation to *Newton-Wellesley* is sufficient to show that he gave "due consideration" to the proliferation issue, particularly since the Medical Center failed to raise the issue with enough specificity to inform the Regional Director that a more detailed explanation was required. *See* note 2, *supra.*

█ Nevertheless, the Medical Center cites some cases criticizing *Newton-Wellesley, see, e.g., NLRB v. HMO Int'l/California Medical Health Plan, Inc.,* 678 F.2d 806, 808 & n. 4 (9th Cir.1982),[4] and contends that the

---

**4.** In *HMO Int'l* the Ninth Circuit asserted that in *Newton-Wellesley,* "the Board reverted to the traditional community of interest analysis, still heedless of the requirement that it develop a distinct approach responsive to the congressional mandate to attend carefully to a particular public interest, *i.e.,* minimizing disruptions of health care service delivery." 678 F.2d at 808–09 & n. 4. *Cf. NLRB v. Frederick Memorial Hospital, Inc.,* 691 F.2d 191 (4th Cir.1982) (*Newton-Wellesley* does not support district director's approval of nurse only unit solely on community of interest determination because *Newton-Wellesley* recognizes other factors may still render such a unit inappropriate). The Court in *HMO Int'l* reiterated the Ninth Circuit's position, adopted in *NLRB v. St. Francis Hospital of Lynwood,* 601 F.2d 404 (9th Cir.1979), defining the inquiry that the NLRB should pursue as "focusing upon the disparity of interest between employee groups which would prohibit or inhibit their representation of employee interests. 601 F.2d at 419." 678 F.2d 808.

With all due respect to our brethren on the Ninth Circuit, we find it difficult to find where in the legislative history to the 1974 NLRA amendments this "disparity of interest" standard is stated. Nor is it clear what is meant by "disparity of interest," other than a semantic inverse of "community of interest." We be-

lieve, however, that the requirement stated in *Newton-Wellesley* that the nurses have a community of interest *separate and distinct* from other employees, 250 NLRB at 411–12 is similar to the finding of "disparity" required by the Ninth Circuit. It may well be that the majority in *HMO Int'l* believed that the Board had misapplied, or at least failed to consider, the "separate and distinct" aspect of *Newton-Wellesley* when it determined, in the *HMO* case, that a unit of registered nurses should not also include licensed vocational nurses (LVN's) at the hospital. The LVN's had been included in a bargaining unit consisting of clerical and technical job categories, even though the LVN's arguably had a "community of interest," or alternatively stated, "no disparity of interest," with the registered nurses.

We decline to attack the reasoning of *Newton-Wellesley,* although we recognize that it may not always be applied correctly. Of course, the reasoning of *Newton-Wellesley* applies only to units of registered nurses, who are usually the largest group of nonsupervisory professionals in a health care facility. Similar reasoning would not apply to other employees, and perhaps not to institutions that employ very few nurses. In the case at hand we note that the Regional Director specifically found that the registered nurses at the Medical Center

Board's determination will lead to undue unit proliferation at the Medical Center. The Medical Center, however, fails to explain to us *how* such unit proliferation can be expected to occur here, and we believe that such proliferation is unlikely. In fact, it is unlikely that the number of bargaining units at the Medical Center will ever exceed the following three: all nonprofessionals, who are already included in a single bargaining unit at the Medical Center; all registered nurses; and all other professionals.[5] The possibility of three bargaining units does not constitute an undue proliferation of units. *See NLRB v. Res-Care, Inc.,* 705 F.2d 1461, 1471 (7th Cir.1983) ("It is a pretty fair inference from the legislative history that four or fewer units, if otherwise suitable on 'community of interest' grounds, would not have been thought undue.")

■ Additionally, we have examined the record and find that the Regional Director's decision regarding the appropriateness of a nurses only unit is supported by substantial evidence. That evidence demonstrates that the Medical Center's 80 registered nurses work in a separate and distinct nursing division embracing 10 separate nursing units; have common administrative, managerial and supervisory personnel; are all engaged directly in the delivery of professional nursing services to hospital patients; have similar educational training and licensing, professional training and experience; and, therefore, as the Regional Director stated, "share a strong and substantial community of interest with each other." The Medical Center has never contested the accuracy of these findings.

Moreover, the Medical Center points to no evidence showing that a community of interest exists between the registered nurses and the employees in the nine other professional classifications that it seeks to have included in the unit. The Regional Director

found that the evidence regarding the other professionals was "scant," and the Medical Center did not challenge this finding before the Board. Reviewing the evidence that was submitted, the Regional Director concluded that the evidence indicated a lack of any community of interest between the nurses and the other professionals. As the Regional Director explained, the two groups have no common supervision, educational background, professional background, or licensing requirements. Moreover, the other professional employees are not integrated directly with the administration of the nursing service division or that division's delivery of professional nursing care. Again, the Medical Center failed to challenge any of these findings before the Board and has not challenged them before this Court.

In sum, it is undisputed that the Medical Center's registered nurses share a strong community of interest with each other, and that they do not share a strong community of interest with the other professional employees. In these circumstances, the Regional Director reasonably applied the Board's *Newton-Wellesley* standard and found that a separate nurses unit was appropriate. We decline to follow the rather wooden application of law that the Medical Center urges upon us. In essence, the Medical Center criticizes *Newton-Wellesley,* and then cites a number of cases in which other appellate courts have denied enforcement of Board orders on proliferation grounds, and asks us to do the same, but fails to provide us with any evidence that the Board was wrong on the facts of this case. The Medical Center's approach would effectively establish a presumption that a bargaining unit made up of registered nurses only is not an appropriate unit absent abundant evidence to the contrary. The legislative history to the 1974 NLRA amendments clearly requires no such result.

lacked a community of interest with the other professional employees. We also note that the burden of proving that registered nurses share a community of interest with other professional employees rests with the employer, and that the Medical Center failed to produce much evidence on this issue.

**5.** Although there is no evidence that the remaining professional employees at the Medical Center, grouped into nine classifications, are interested in organizing, it is clear that these classifications are of the type that the Board ordinarily requires to combine in a single unit. *See* Newton-Wellesley, 250 NLRB at 414–15.

B. *Was the Board's Finding That ASNA is an Appropriate Representative of the Non-Supervisory Registered Nurses Supported by Substantial Evidence in the Record?*

The Medical Center challenges the Board's finding that no conflict of interest exists between ASNA and the interests of the registered nurses unit at the Medical Center. The primary basis for the Medical Center's challenge is that a number of members of ASNA's Board of Directors fill supervisory positions at various hospitals and nurse-training institutions in Alabama. Therefore, the Medical Center argues that ASNA is dominated by supervisory personel who may not have the unit employees' best interests at heart, or who may suffer from "divided loyalties" when they represent their employers. The Medical Center goes on to pose a number of potential conflicts of interest that might arise. For example, the Medical Center posits that some ASNA directors might oppose efforts to increase the wages of registered nurses at the Medical Center because such a raise could persuade nurses at other institutions to switch to the Medical Center at a time when there is a critical nursing shortage in Alabama.

Recognizing that a state nurses' association might in some instances be disqualified from representing a unit of nonsupervisory nurses, due to conflicts of interest, *see, e.g., NLRB v. Annapolis Emergency Hospital Ass'n,* 561 F.2d 524 (4th Cir.1977), the NLRB has established an elaborate framework for analyzing when a state nurses association should be certified as a collective bargaining representative. *See Abington Memorial Hospital,* 250 NLRB 682 (1980); *Lodi Memorial Hospital Ass'n,* 249 NLRB 786 (1980); *Healdsburg General Hospital,* 247 NLRB 212 (1980); *Rockford Memorial Ass'n,* 247 NLRB 319 (1980); *Arlington Hospital Ass'n,* 246 NLRB 992 (1979); *Lancaster Osteopathic Hospital Ass'n,* 246 NLRB 600 (1979); *Western Baptist Hospital,* 246 NLRB 170 (1979); *Sierra Vista Hospital, Inc.,* 241 NLRB 631 (1979). Under that framework the employer has a heavy burden of "showing that [the] danger of a conflict of interest interfering with the collective bargaining process is clear and

present." *Sierra Vista Hospital, Inc.,* 241 NLRB 631, 633 (1979), (quoting *NLRB v. David Buttrick,* 399 F.2d 505, 507 (1st Cir. 1968)).

The Board found that each collective bargaining unit within ASNA initiates its own organizing effort, adopts its own rules to govern the conduct of bargaining unit business, and elects members to serve as officers. Bargaining is conducted by a negotiating committee selected and composed of unit members. Unit members have sole authority to accept or reject proposed modifications of bargaining proposals, and, upon completion of negotiations, have sole authority to accept or reject any proposed bargaining agreements.

Within ASNA, responsibility for the association's organizing and bargaining efforts rests with ASNA's Commission on Economic and General Welfare ("Commission") which oversees a professional staff in ASNA's Economic and Welfare Program ("EWP"). ASNA's by-laws prohibit nurses holding supervisory positions from serving on the Commission. The Commission is responsible only to ASNA's executive director, not the Board of Directors. Based on these facts the Board found that ASNA's labor activities are sufficiently insulated from Board interference to negate the probability of a conflict of interest. We note that if an actual conflict of interest should develop due to extensive supervisory participation in ASNA, the unit members may invoke the Board's unfair labor practice proceedings to allege employer domination of the union. *See International Ass'n of Machinists v. NLRB,* 311 U.S. 72, 80, 61 S.Ct. 83, 88, 85 L.Ed. 50 (1940); *Power Regulator Co. v. NLRB,* 355 F.2d 506, 508 (7th Cir.1966). We note that the Medical Center failed to produce any evidence of actual conflict of interest between ASNA and the Medical Center bargaining unit. Rather, all of the Medical Center's evidence was predicated on the potential for conflict.

Thus, based on the record before us, we are not persuaded that the Medical Center met its burden of proving a clear and present danger of a conflict of interest in

this case. Nor are we persuaded that the Board's decision here failed to adhere to the framework established by the Board for analyzing conflict of interest allegations when a state nurses association seeks to represent nonsupervisory registered nurses. Finally, we hold that the Board's decision was supported by substantial evidence in the record. Therefore, we affirm the Board's finding that ASNA is an appropriate collective bargaining representative for the members of the Medical Center unit of registered nurses.

C. *Was the Board's Finding that Assistant Unit Coordinators and Charge Nurses are not Supervisors Supported by Substantial Evidence in the Record?*

 Although the evidence presented by the Medical Center makes the question of whether assistant unit coordinators and charge nurses are supervisors a close issue, we are satisfied that the Board's decision is supported by substantial evidence and therefore should be enforced. The problem in this case, as in many cases involving employees in professional classifications, is that registered nurses often exercise independent judgment in their professional capacities, which can appear similar to the judgment exercised by a supervisor. We are satisfied in this case that although the assistant unit coordinators and charge nurses at the Medical Center perform some duties also performed by unit coordinators, the evidence shows that the former are engaged primarily in direct patient care, whereas the latter work primarily as supervisors. Moreover, the record shows that assistant unit coordinators and charge nurses are not responsible for major personnel decisions, such as hiring, firing, transferring, and disciplining employees. Therefore, we uphold the Board's finding that the assistant unit coordinators and charge nurses at the Medical Center are not supervisors.

For the reasons stated above, we hold that approval of a collective bargaining unit of registered nurses only was appropriate, that ASNA is an appropriate bargaining representative for the nurses unit, and that assistant unit coordinators and charge nurses are nonsupervisory employees entitled to be members of the nurses unit.

ORDER ENFORCED.