ST. JOHN'S GENERAL HOSPITAL OF ALLEGHENY—ADR CENTER (and its successor St. John's Health and Hospital Center, Inc.—Brighton Woods Treatment Center), Petitioner in No. 86–3628,

v.

NATIONAL LABOR
RELATIONS BOARD

Amalgamated Food Employees Local 590, United Food and Commercial Workers International Union, Intervenor.

ST. JOHN'S GENERAL HOSPITAL OF ALLEGHENY—ADR CENTER (and its successor St. John's Health and Hospital Center, Inc.—Brighton Woods Treatment Center)

v.

NATIONAL LABOR RELATIONS
BOARD, Petitioner in
No. 86–3696.

Nos. 86–3628, 86–3696.

United States Court of Appeals,
Third Circuit.

Argued June 18, 1987.
Decided July 31, 1987.

Henry Woodruff Turner (argued), Kirkpatrick and Lockhart, Pittsburgh, Pa., for petitioner in No. 86–3628.

Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliot Moore, Deputy Associate Gen. Counsel, W. Christian Schumann, Charles Donnelly (argued), N.L.R.B., Washington, D.C., for N.L.R.B.

James R. Reehl, Pittsburgh, Pa., David M. Silberman, Laurance Gold, George Murphy, United Food and Commercial Workers Intern. Union, Washington, D.C., for intervenor.

Before SEITZ and MANSMANN, Circuit Judges, and BISSELL, District Judge.*

## OPINION OF THE COURT

SEITZ, Circuit Judge.

The employer, St. John's General Hospital of Allegheny County–ADR Center (the Center), petitions this court for review of the order of the National Labor Relations Board (the NLRB or Board) finding that the Center had engaged in unfair labor practices by refusing to bargain with the union in violation of sections 8(a)(1) and (5) of the National Labor Relations Act (the NLRA or the Act). 29 U.S.C. § 158(a)(1), (5) (1982). The Board cross-petitions for enforcement of its order. This court has jurisdiction pursuant to 29 U.S.C. § 160(e), (f) (1982).

### I.

The Center provides detoxification, rehabilitation, and outpatient treatment services for alcoholics and drug addicts. In December 1980 the Union [1] filed a petition with the Board's Regional Director seeking to represent a bargaining unit composed of all professional employees, excluding doctors, and all nonprofessional employees, except the clerical staff, employed at the Center.

The Regional Director held a hearing on the petition in early 1981. The hearing centered on two issues: whether the Center's counselors should be classified as professional employees, and whether the eight clerical employees should be included in the bargaining unit.

The Regional Director found that the counselors were properly classified as nonprofessional employees and thus were within the bargaining unit. He then turned to the Center's contention that the eight clerical employees should be in the bargaining unit. The Regional Director concluded that the two data coordinators and the medical records clerk should be placed in the unit. He, however, determined that the other five clerical employees—three admissions clerks, the switchboard operator, and the billing clerk—should be excluded from the unit because they were business office clericals. The Regional Director thus ordered that an election be held, with the eight professional employees, all registered nurses, first voting separately on whether they wanted to be included in a bargaining unit with nonprofessional employees.

The Center filed a Request for Review with the Board, challenging the Regional Director's determinations as to the counselors and the clerical employees. The day before the election the Board, by telegraphic order, denied the Center's request for review. The Board, however, stated that the exclusion of the three admissions clerks raised a substantial question, and directed

---

* The Honorable John W. Bissell of the United States District Court for the District of New Jersey, sitting by designation.

1. Amalgamated Food Employees Local 590, United Food and Commercial Workers International Union, AFL–CIO–CLC.

that these clerks be permitted to vote subject to challenge.

The professional employees voted five to three for inclusion in the unit with nonprofessionals. The voting in the overall unit resulted in 55 votes for the Union and 19 opposed to it, with four votes challenged (including the three admissions clerks).

The Center filed an objection to the election, contending that the election eve enfranchisement of the admissions clerks introduced impermissible confusion into the election process. The Regional Director overruled the Center's objection on the ground that it failed to raise a substantial or material issue of fact affecting the validity of the election. He thus certified the Union as the collective bargaining representative of the unit.[2] The Board denied the Center's request for review of the Regional Director's decision.

The Center refused to bargain with the Union. The Union filed an unfair labor practice charge against the Center, and the General Counsel filed a complaint and motion for summary judgment against the Center in June.

The unit employees thereafter voted to strike to protest the Center's refusal to bargain. The strike lasted from August 1981 to May 1982. During the strike the Center instituted a number of changes in the working conditions of the unit employees. The General Counsel then filed additional complaints against the Center, alleging that the Center committed unfair labor practices by instituting unilateral changes in the conditions of employment during the strike.

In a hearing before an administrative law judge (the ALJ), the Center argued that its actions were justified because the scope of the bargaining unit was inappropriate and because the Union had engaged in strike misconduct. The ALJ refused to address the scope of the bargaining unit issue because it had already been decided by the Board. The ALJ also rejected the Center's strike misconduct defense. The ALJ thus recommended that the Board find that the Center had engaged in unfair labor practices by refusing to bargain with the union and by instituting unilateral changes in the conditions of employment.

The Board adopted the findings of the ALJ. To remedy the violations, the Board issued a cease and desist order against the Center. In addition, the Board directed the Center, on the request of the union, to rescind certain of the unilateral changes in the conditions of employment and to restore the pre-strike conditions.

## II.

The Center raises two challenges to the certification of the bargaining unit in its petition. First, it contends that the scope of the bargaining unit is inappropriate because it excludes some of the clerical employees. Second, the Center argues that the Board erred in classifying the outpatient and recreational counselors as nonprofessionals. Because of these two alleged errors, the Center asserts that a new election is required.[3]

## A.

Congress amended the NLRA in 1974 to extend coverage of the Act to employees of

2. The bargaining unit as certified by the Regional Director consists of:

All full-time and regular part-time professional employees, including registered nurses employed by the Employer ... and all full-time and regular part-time nonprofessional employees including detoxification, rehabilitation, out-patient and driving-under-the-influence counselors, the information and education director, the public relations director, licensed practical nurses, nurses' assistants, unit secretaries, the medical records clerk, the CIS coordinator, the data coordinator, dietary department employees, and housekeeping department employees including the linen service person and maintenance person; exclud-

ing physicians and other professional employees, business office clericals including the switchboard operator and billing clerk, confidential employees, guards and supervisors as defined in the Act.

3. The Center also argues that the a new election should be held because the Board's order conditionally enfranchising the admissions clerks introduced improper confusion into the election process, and because the Board erred in dismissing the Center's objections to the election without reviewing the Regional Director's investigative file. After a review of the record, we conclude that these contentions are wholly without merit.

nonprofit hospitals. Congress recognized, however, that extending the NLRA to the health care industry presented special problems in terms of the potential for disruptions of service. *See* S.Conf.Rep. No. 93–766, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 3946, 3948 (the Conference Report); *St. Vincent's Hospital v. NLRB*, 567 F.2d 588, 590 (3d Cir. 1977). Thus, the House and Senate Reports contained identical language admonishing that "[d]ue consideration should be given by the Board to preventing proliferation of bargaining units in the health care industry." Conference Report at 3950; S.Rept. No. 93–766, 93d Cong., 2d Sess. 5 (1974); H.Rep. No. 93–1051, 93d Cong., 2d Sess. 7 (1974).

As a general rule, the Board has great discretion in determining the scope of a bargaining unit, and the "decision of the Board, if not final, is rarely to be disturbed." *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947). We review the Board's determination of the scope of a bargaining unit "to insure that the exercise of the agency's discretion is not unreasonable, arbitrary, or in conflict with congressional intent." *St. Vincent's Hospital, supra*, 567 F.2d at 590.

■ In the field of health care, every court of appeals but the Court of Appeals for the District of Columbia that has addressed this issue has concluded that the Board must consider the issue of undue proliferation in determining the scope of a bargaining unit.[4] In particular, this court has concluded that Congress instructed the Board to employ a different standard in the

health care industry from that generally employed in defining the scope of a bargaining unit. *See Allegheny General Hospital v. NLRB*, 608 F.2d 965, 968–69 (3d Cir.1979); *St. Vincent's Hospital, supra*, 567 F.2d at 592. Accordingly, when the Board considers the scope of a bargaining unit,

> the factors of amount of contact between workers, separate immediate supervision and special skills of [the employees] must be put in balance against the public interest in preventing fragmentation in the health care field. A mechanical reliance on traditional patterns ... does not comply with congressional intent to treat this unique field in a special manner.

*St. Vincent's Hospital, supra*, 567 F.2d at 592.[5]

The Center argues that the Board abused its discretion in this case because it failed to consider the proliferation issue in defining the scope of the bargaining unit. We disagree. After considering the interests of the clerical employees, the Regional Director explicitly referred to the problem of undue proliferation in his decision. Moreover, although the Regional Director did not expressly articulate his reasons for concluding that this concern was not implicated in this case, he cited a number of cases in which the Board has articulated its reasons for excluding business office clericals from units of other nonprofessional hospital employees. We conclude that the reference to other Board decisions is sufficient in this case to demonstrate that he gave "due consideration" to the public interest in avoiding undue proliferation. *See Walker Cty. Medical Center, supra*, 722 F.2d at

---

4. *See NLRB v. Walker City Medical Center, Inc.*, 722 F.2d 1535 (11th Cir.1984); *Long Island Jewish-Hillside Medical Center v. NLRB*, 685 F.2d 29 (2d Cir.1982); *Presbyterian/St. Luke's Medical Center v. NLRB*, 653 F.2d 450 (10th Cir.1981), *cert. dismissed*, 459 U.S. 1025, 103 S.Ct. 433, 74 L.Ed.2d 522 (1982); *Watonwan Memorial Hospital, Inc. v. NLRB*, 711 F.2d 848 (8th Cir.1983); *NLRB v. Frederick Memorial Hospital Inc.*, 691 F.2d 191 (4th Cir.1982); *NLRB v. Sweetwater Hospital Assn.*, 604 F.2d 454 (6th Cir.1979); *NLRB v. St. Francis Hospital of Lynwood*, 601 F.2d 404 (9th Cir.1979); *NLRB v. West Suburban Hospital*, 570 F.2d 213 (7th Cir.1978); *St. Vincent's Hospital v. NLRB*, 567 F.2d 588 (3d

Cir.1977). *But see International Brotherhood of Electrical Workers, Local Union No. 474 v. NLRB*, 814 F.2d 697 (D.C.Cir.1987).

5. The intervenor Union argues that the reliance on the legislative history to support a different standard for bargaining units in the health care industry is misplaced in light of Congress's failure to amend the statute. Under this court's Internal Operating Procedure Rule 8(c), however, a panel of this court may not overrule the decisions of previous panels. We therefore will not address the merits of the Union's contentions.

1539; *Watonwan Memorial Hospital, supra,* 711 F.2d at 851; *Trustees of Masonic Hall & Asylum Fund v. NLRB,* 699 F.2d 626, 635 (2d Cir.1983).

■ The Center also contends that the Board erred because it should have applied the "disparity of interests" test in this case. *See Presbyterian/St. Luke's Medical Center, supra,* 653 F.2d at 457; *St. Francis Hospital of Lynwood, supra,* 601 F.2d at 416; *St. Francis Hospital II,* 271 NLRB 948 (1984), *enf. denied,* 814 F.2d 697 (D.C.Cir.1987).[6] Neither the 1974 Amendments nor the legislative history, however, support such a requirement. *See Watonwan Memorial Hospital, supra,* 711 F.2d at 850; *Trustees of Masonic Hall, supra,* 699 F.2d at 641.

The disparity of interest test would require the Board to adopt the largest appropriate bargaining unit in all cases. Congress, however, declined to enact a bill offered by Senator Taft,[7] that would have restricted the Board from designating more than four units. As Senator Williams, a sponsor of the 1974 Amendments, stated:

[T]he National Labor Relations Board has shown good judgment in establishing appropriate units for the purpose of collective bargaining.... While the Board has, as a rule, tended to avoid any unnecessary proliferation of collective bargaining units, sometimes circumstances require that there be a number of bargaining units among nonsupervisory employees, particularly where there is such a history in the area or a notable disparity of interests between employees in different job classifications.

While the committee clearly intends that the Board give due consideration to its admonition to avoid an undue proliferation of units in the health care industry, *it did not within this framework intend to preclude the Board acting in the public interest from exercising its specialized experience and expert knowledge in determining appropriate bargaining units.*

120 Cong.Rec. 22575 (1974), *reprinted in* Sen.Subcomm. on Labor, Comm. on Labor & Public Welfare, 93d Cong. 2d Sess., Legislative History of the Coverage of Nonprofit Hospitals under the National Labor Relations Act, 1974, Public Law 93–360 at 362–63 (1974) (emphasis added). Congress thus intended the Board to continue to exercise its discretion in certifying bargaining units in the health care field.

It is not the function of this court to ensure that the Board selects the most appropriate bargaining unit. Rather, the "Board need only certify 'an appropriate' bargaining unit." *Watonwan, supra,* 711 F.2d at 850. In this case, the Board adhered to the congressional directive to consider the problem of undue proliferation. In addition, there is substantial evidence in the record to support its conclusion that the nonprofessional employees included in the bargaining unit have a substantial community of interests separate and distinct from those of the business office clericals. We therefore conclude that the Board did not abuse its discretion in its determination of the scope of the bargaining unit.

### B.

■ The Center also contends that the bargaining unit is inappropriate because the outpatient and rehabilitation counselors were improperly classified as nonprofessional employees. Under the NLRA, professionals have the right to vote separately on whether they want to be in a bargaining unit that includes nonprofessional employees. 29 U.S.C. § 159(b)(1) (1982). The Center argues that the counselors are professional employees and thus they should have voted with the registered nurses on wheth-

---

6. In *International Brotherhood of Electrical Workers, Local Union No. 474 v. NLRB,* 814 F.2d 697 (D.C.Cir.1987), the court rejected the Board's adoption of the disparity of interest test. The Board has recently announced that it will institute rulemaking proceedings to establish rules for determining appropriate bargaining units in the health care industry.

7. S. 2292, 93d Cong., 1st Sess. (1973), *reprinted in* Sen. Subcomm. on Labor, Comm. on Labor & Public Welfare 93d Cong., 2d Sess., Legislative History of the Coverage of Nonprofit Hospitals Under the National Labor Relations Act, 1974, Public Law 93–360 at 449.

er they wished to be in a unit with the nonprofessional employees.

The Board's decision as to whether employees are professionals is a factual determination.[8] The decision that the counselors are nonprofessional employees, therefore, must be upheld if it is supported by substantial evidence. *See Season-All Industries v. NLRB*, 654 F.2d 932, 942 (3d Cir.1981), overruled on other grounds, *NLRB v. ARA Services, Inc.*, 717 F.2d 57 (3d Cir.1983) (in banc).

The Regional Director found that the Center did not adhere to its written requirement that rehabilitation counselors have advanced training and that it "will accept educational backgrounds from a high school diploma to a master's degree." In addition, he found that these counselors received close supervision and that their exercise of judgment and discretion was "quite limited."

Although three of the four outpatient counselors have master's degrees, the Regional Director concluded that it was "not clear from the record that the outpatient counselor position requires this advanced training." He also found that the outpatient counselors used similar skills to those of the rehabilitation counselors and that the types of work performed by both types of counselors shared a "high degree of similarity." The Regional Director thus concluded that the outpatient and rehabilitation counselors were not professional employees.

The Center argues that the Board decision in *Express-News Corporation*, 223 NLRB 627 (1976), creates a presumption that the employees are professional employees when a majority of the employees have advanced degrees, and thus the Board erred in not considering the outpatient counselors to be professional employees.

We do not believe, however, that *Express News* can be read to create such a broad presumption. Rather, *Express News* stands for the proposition that the Board as a general rule will be reluctant to conclude that a class of employees is a professional unit unless the class is composed predominantly of employees with an advanced degree. 223 NLRB at 629. The case simply does not address the converse situation.

The Board traditionally has found alcoholism counselors to be nonprofessional employees. *See, e.g., Milwaukee Sanitarium Foundation, Inc.*, 219 NLRB 1043 (1975); *Mount Airy Foundation*, 217 NLRB 802 (1975). Further, the Board has construed the definition of professional employees to apply "to small and narrow classes of employees." *Express News, supra*, 223 NLRB at 630. Considering the record as a whole, we conclude that the Board's decision to adhere to its traditional approach in classifying the counselors is supported by substantial evidence.

We hold that the Board did not abuse its discretion in certifying the bargaining unit. The Center's request for a new election therefore will be denied.

### III.

The Board seeks enforcement of its order directing the Center to bargain with the Union and to rescind, on the request of the Union, certain conditions instituted by the Center during the strike. These changes include the reassignment of certain duties from unit secretaries to nurse assistants; the rotation of nurses' shifts; the revised method of computing the counselors' compensation; and the December 1981 wage increases. The Center argues that the Board's order should be

---

8. An employee is a professional employee if he or she is engaged in work (i) predominantly intellectual and varied in character as opposed to routine mental, manual, mechanical, or physical work; (ii) involving the consistent exercise of discretion and judgment in its performance; (iii) of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time; (iv) requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study in an institution of higher learning or a hospital, as distinguished from a general academic education or from an apprenticeship or from training in the performance of routine mental, manual, or physical processes.
29 U.S.C. § 152(12) (1982).

modified to the extent that it requires the restoration of pre-strike conditions.

The Center's institution of unilateral changes in mandatory subjects of bargaining after the Union had been certified constituted an unfair labor practice. *See, e.g., May Stores Co. v. NLRB*, 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145 (1945). The Board's power to fashion remedies for unfair labor practices is a "broad discretionary one, subject to limited review." *Fibreboard Corp. v. NLRB*, 379 U.S. 203, 216, 85 S.Ct. 398, 406, 13 L.Ed.2d 233 (1964). This court may not disturb a remedial order of the Board "unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Virginia Electric & Power Co. v. NLRB*, 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943).

The Board has the power to order the restoration of the status quo ante when an employer has refused to bargain over a mandatory subject. *See, e.g., Fibreboard, supra*, 379 U.S. at 215–17, 85 S.Ct. at 405, 13 L.Ed.2d 233. The Center, however, argues that the order to rescind the changes at the request of the Union should not be enforced because circumstances have changed in the past five years.

This court has refused to enforce Board orders when the circumstances have changed such that the order is rendered meaningless or futile. For example, in *ABC Trans-National Transport v. NLRB*, 642 F.2d 675, 687 (1981), implicitly overruled on other grounds, *First National Maintenance Corp. v. NLRB*, 452 U.S. 666, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981), this court refused to enforce a bargaining order when the employer had closed its plant because the order required the employer to engage in a "seemingly futile task." There is nothing in the record, however, to indicate that the implementation of the Board's order would be futile in this case.

The Center also argues that the delay in the enforcement proceedings renders the Board's order to rescind the changes unfair. Mere lapse of time, however, is not grounds to deny an order of the Board. *See NLRB v. Katz*, 369 U.S. 736, 748 n. 16, 82 S.Ct. 1107, 1114 n. 16, 8 L.Ed.2d 230 (1962). We therefore conclude that the Board's order is a proper exercise of its remedial powers.

### IV.

In light of the foregoing analysis, the center's petition for review of the Board's order will be denied, and the Board's cross application for enforcement will be granted.