**DESERT HOSPITAL, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 95–1246.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 12, 1996.

Decided Aug. 9, 1996.

Robert M. Stone, Los Angeles, CA, argued the cause and filed the briefs, for petitioner.

Julie B. Broido, Senior Attorney, National Labor Relations Board, Washington, DC, argued the cause for respondent, with whom Linda R. Sher, Acting Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and John H. Ferguson, Assistant General Counsel, were on the brief. Peter D. Winkler, Supervisory Attorney, entered an appearance.

Before: SENTELLE, RANDOLPH and ROGERS, Circuit Judges.

SENTELLE, Circuit Judge:

Employer Desert Hospital petitions for review of a decision and order by the National Labor Relations Board ("NLRB" or "the Board") finding that it had committed an unfair labor practice by refusing to bargain with the California Nurses Association/American Nurses Association ("CNA" or "the Association"), in violation of sections 8(a)(5) and (1) of the National Labor Relations Act ("NLRA" or "Act"), 29 U.S.C. §§ 158(a)(5) and (1). Employer asserts error in the underlying certification of CNA as a bargaining representative. The Board cross-petitions for enforcement of its order. Finding no error, we affirm.

## I. INTRODUCTION

*Factual Background*

Desert Hospital is an acute care hospital providing health care services with various facilities located in the Palm Springs, California area. On February 5, 1993, the CNA, a state nursing association that admits as members both staff registered nurses and statutory supervisors and managers, petitioned the Board for a representation election of all registered nurses employed by Desert Hospital. The Hospital opposed the petition, contending that the Association was disqualified from serving as a bargaining representative.

During a three day hearing on this issue, the Hospital introduced evidence purporting to show that: (1) the Association was not a labor organization under Section 2(5) of the Act because of the allegedly uninsulated presence of supervisory employees among its members; (2) a schism existed in the organization; and (3) the Association had failed to insulate supervisory members from its collective bargaining unit. The Board's acting Regional Director for Region 21 rejected the Hospital's claims and directed an election be held in a unit consisting of registered nurses at the Hospital's facilities. *Desert Hospital,* Decision and Direction of Election, Case21–RC–19173 (Apr. 6, 1993) (*"Regional Director's Decision"*). Employer moved the acting Regional Director to reopen the record for the submission of newly discovered evidence on April 14, 1993. The Regional Director denied this motion. The Hospital sought review of both decisions by the Regional Director. On May 13, 1993, the Board denied employer's request for review and summarily upheld the ruling of the Regional Director.

An election was held on May 13, 1993 in a unit consisting of the non-supervisory registered nurses employed at the Hospital. The official tally showed that 172 voters cast ballots for and 171 voters cast ballots against representation by the Association. There were six challenged ballots and one contested "void" ballot. After conducting an investigation, the Regional Director sustained challenges to five ballots (including that of Mary Madden), overruled the challenge to one ballot (that of Alima Davis) and changed the "void" ballot to a "no" vote. *Desert Hospital,* Supplemental Decision, Case21–RC–19173 (Dec. 22, 1993).

The Hospital requested a review of this decision, arguing that the Director had erred in sustaining the challenge to Mary Madden's ballot and in overruling the challenge to Alima Davis's ballot. The Board denied this request. *Desert Hospital,* Order, Case 21–RC–19173 (Jan. 10, 1995) (NLRB denial of request for review of Supplemental Decision). As a result of this ruling, the vote of Alima Davis was opened and counted. Her "yes" vote brought the final tally to 173 votes for and 172 votes against representation by the Association. The Director then certified the Association as the unit's representative. *Desert Hospital,* Certification of Representative, Case 21–RC–19173 (Jan. 31, 1995).

On February 1, the Association requested bargaining with the Hospital, but the Hospital refused. The Association then filed an unfair labor practice charge with the Board. In response to this charge, the Board issued a complaint, alleging that the Hospital's refusal to bargain violated sections 8(a)(5) and (1) of the NLRA. The Hospital filed an answer to the complaint, admitting in part and denying in part the allegations in the complaint, and asserting affirmative defenses. On March 23, the Board's counsel filed a motion for summary judgment. The Board granted this motion on April 17, 1995, finding that the Hospital had violated sections 8(a)(5) and (1) of the Act by refusing to bargain with the Association and ordering the Hospital to bargain with CNA as the employees's exclusive representative. *Desert Hospital,* 316 N.L.R.B. 1240, 1995 WL 232090 (1995).

The Hospital filed this petition for review of the Board's decision and order, and the Board filed a cross-application seeking enforcement of the order.

## II. DISCUSSION

Employer does not contest the Board's conclusion that it refused to bargain with the certified representative of its employees. Its assignments of error all go to the underlying

certification. We find them to be without merit.

### A. The Supervisory Membership Issue

The Hospital's most sweeping challenge to the certification alleges that the CNA is fundamentally disqualified from service as a collective bargaining representative because it numbered among its members employees who were "supervisors" under the Act and failed to insulate its collective bargaining program from the influence of statutory supervisors as required by *Sierra Vista Hospital, Inc.*, 241 N.L.R.B. 631, 1979 WL 8925 (1979), and because the Association was riven by a schism resulting from a conflict over policy.

In *Sierra Vista*, the Board established the general framework within which it evaluates claims that a labor organization is disqualified from serving as a bargaining representative because of the active participation of supervisors in the organization. The Board distinguished between organizations in which the employer's own supervisors both actively participate in the labor organization and have some authority within it and those in which the only supervisors actively participating in the labor organization work for employers other than the one being organized. *Id.* at 632–33. The Board noted in *Sierra Vista* that in the latter instance, even if supervisors of other employers constituted a majority of the organization's board of directors, that fact would not in and of itself require disqualification "absent some other demonstrated conflict of interest." *Id.* at 633. In reviewing such claims, the Board held that it is the employer's burden to prove a clear and present danger of a conflict of interest. *Id.*; *see also Highland Hosp. v. NLRB*, 861 F.2d 56, 58 (2d Cir.1988); *NLRB v. Walker County Medical Ctr., Inc.*, 722 F.2d 1535, 1541–42 (11th Cir.1984).

In the instant case, the Regional Director found that, although supervisors are eligible to serve on CNA's Board of Directors, none served on that board during the time of this dispute. *Regional Director's Decision* at 3. Further, he observed that if supervisors were elected to the board, the Association has established procedures that are designed to insulate its collective bargaining functions from supervisory influences. For instance, he noted that the Association's collective bargaining policies are developed and controlled by its Economic and General Welfare Congress, an elected body composed entirely of nonsupervisory nurses from bargaining units represented by the Association. *Id.* In addition, the Congress only has an informational relationship to the Board of Directors and is not subject to instruction from it. *Id.* The Director also noted that the Board of Directors plays no role in bargaining strategy, strike policies, collective bargaining policy, contract ratification, grievances or arbitration. *Id.* Thus, the Director held that the evidence failed to establish that a sufficient conflict of interest existed to disqualify the Association from representing the Hospital's employees. *Id.* at 4.

The Hospital contended before the Board and contends now that the Regional Director's ruling on the eligibility issue deprived it of due process in that the Director improperly prevented it from introducing evidence at the hearing regarding the *Sierra Vista* and schism questions. The burden of showing prejudice from assertedly erroneous rulings is on the party claiming injury. *NLRB v. Heath Tec Div./San Francisco*, 566 F.2d 1367, 1371–72 (9th Cir.), *cert. denied*, 439 U.S. 832, 99 S.Ct. 110, 58 L.Ed.2d 127 (1978). Applying this burden allocation, we hold that the Hospital failed to show that any prejudice resulted from its inability to present the additional evidence at the hearing.

The employer's proffered evidence arose in litigation arising from an internal dispute in the CNA. The litigation, which was pending at the time of the Board hearing, resulted in a temporary restraining order, *Costello v. Nichols*, No.C–93–0041 (N.D. Cal. Feb. 11, 1993), and a preliminary injunction, *Costello v. Nichols*, No. C–93–0041 (N.D. Cal. Mar. 10, 1993), both of which required the Association to enforce the bylaws and provisions that were established to insulate its collective bargaining unit against actual or potential influence by the Board of Directors and statutory supervisors. Even if we assume that the evidence would have shown the existence of a conflict relevant to the ability of the

CNA to serve as a bargaining representative, the litigation upon which the employer relies resulted in a restraining order requiring the Association to enforce bylaws and other safeguards established to insulate its collective bargaining function from actual or potential influence by the Board of Directors and by statutory supervisors. Thus, any alleged breaches the Hospital sought to prove were ordered repaired by the district court. Further, all of the appeals from this litigation were voluntarily dismissed in August 1993 and June 1994.

■ The Hospital also contends that the Supreme Court's ruling in *NLRB v. Health Care & Retirement Corp.*, 511 U.S. 571, 114 S.Ct. 1778, 128 L.Ed.2d 586 (1994), warrants reconsideration of its claims. In that case the Supreme Court struck down as inconsistent with the Act the Board's test for determining whether a nursing employee is a statutory supervisor. Employer argues that the Court's ruling broadens the category of employees who would be deemed statutory supervisors and that therefore the chances of supervisory influence existing in the CNA would increase. We find this argument unavailing. The safeguards currently in place to guard against such influence are not dependent upon the number of members deemed "supervisors." Hence, the safeguards should be effective regardless how many members of the Association are found to have supervisory roles.

### B. The Challenged Ballot Issues

The Hospital's only other arguments concern the decisions of the Board with respect to two challenged ballots. Because of the one vote margin, these ballots are of course critical to the results of the election but we do not find either decision problematic.

■ The first challenge is to the Board's decision holding Alima Davis a "regular" employee and accepting her ballot. The Hospital argues that no substantial evidence exists in the record to support the Board's finding that Alima Davis was a "regular" employee. It notes that Davis, an on-call registered nurse, worked only a total of 56.5 hours during the calendar quarter immediately preceding the eligibility cutoff date, resulting in an average of 4.35 hours per week. It maintains that the Board impermissibly ignored that all of these hours were worked during the first three weeks of that period and that Davis did not "regularly" average four hours per week. The Hospital also contends that Davis's ballot should not have been counted as there had been *de facto* termination of her employment prior to the election.

We will uphold a Board's exercise of discretion "unless its action is unreasonable, arbitrary or unsupported by the evidence." *BB & L, Inc. v. NLRB*, 52 F.3d 366, 369 (D.C.Cir.1995) (per curiam). We must therefore uphold a Board decision if it is "rational and in accord with past precedent." *Id.*

Here, the Hospital and the Association entered into a stipulation regarding eligibility at the pre-election hearing. The stipulation stated that all non-scheduled or on-call registered nurses who averaged at least four hours or more of actual work during the 13–week quarter prior to the March 27, 1993 eligibility date could vote in the election. At the Hospital's request, a provision was added: "[An] employee need not work in each of the 13 weeks of the quarter as long as they average four hours per week over that period of time." *Desert Hospital*, Supplemental Decision at 3 n.2.

Although conceding that the four-hour formula contained in the stipulation is consistent with Board policy and precedent, the Hospital argues that the Board's mechanical application of the formula is not. In *BB & L, Inc.*, we recognized that strict application of the four-hour test is inappropriate where special circumstances exist suggesting no "community of interest" is present. 52 F.3d at 370. The Hospital contends that such special circumstances existed here as Davis's employment was neither continuous nor regular. To support this claim, the Hospital notes that Davis did not work in the latter part of the eligibility quarter; that a staffing secretary had tried without success to contact Davis on several occasions after mid-January 1993, asking her to call back if she could not work; and that Davis either did not return the calls or indicated that she was unavailable or sick. Thus, the Hospital ar-

gues she had no "real continuing interest in the terms and conditions of employment offered by the employer." *Id.* at 371 (quoting *Trump Taj Mahal Assoc.*, 306 N.L.R.B. 294, 296, 1992 WL 27705 (1992)).

We disagree. *BB & L, Inc.* is inapposite. In that case, the parties did not enter into a stipulation regarding eligibility prior to the election. Here, the parties clearly did. In *Avecor, Inc. v. NLRB*, 931 F.2d 924, 932 (D.C.Cir.1991), *cert. denied*, 502 U.S. 1048, 112 S.Ct. 912, 116 L.Ed.2d 812 (1992), we held:

> When the parties stipulate the bargaining unit ... the Board has a .... limited role. First it must ensure that the stipulated terms do not conflict with fundamental labor principles. Having done so, its task is simply to enforce the agreement. If the terms of the stipulation are unambiguous, the Board must hold the parties to its text. If the terms are ambiguous, the Board may look to the usual factors governing the definition of an "appropriate unit," including the community-of-interest standard.

*See also Dacas Nursing Support Sys., Inc. v. NLRB*, 7 F.3d 511 (6th Cir.1993) (finding that NLRB may not rely on worker's casual status or lack of community-of-interest to disregard terms of unambiguous stipulation); *NLRB v. Speedway Petroleum*, 768 F.2d 151, 156 (7th Cir.1985) (same).

The portion of the stipulation at issue provides: "[An] employee need not work in each of the 13 weeks of the quarter as long as they average four hours per week over that period of time." There is nothing ambiguous about this provision. That Davis did not work the latter portion of the eligibility quarter thus has no import in our analysis. Davis worked more than four hours per week in the eligibility quarter, averaging 4.35 hours per week. Under the stipulated formula, therefore, she was entitled to vote in the election, and the Board did not err in counting her ballot.

■ The Hospital also contends that Davis's vote should have been excluded as there had been *de facto* termination of her employment prior to the date of the election. It notes that staffing secretaries ceased call-

ing Davis as of April 23, treating her as ineligible for additional scheduling after that date. Although conceding that Davis's name had not been removed from the on-call list, the Hospital contends that its staffing secretaries had made a conscious decision not to call her again.

Taken as a whole, however, the evidence clearly supports the Board's finding that no *de facto* termination of Davis occurred. Contrary to the Hospital's argument, the staffing secretaries did not cease calling Davis because she was ineligible to work. Rather, they ceased calling her because she did not return their calls and was unavailable for work on the days on which they did reach her. Further, the staffing secretaries failed to follow normal Hospital practice regarding removal of on-call employees from the staffing list as no secretary contacted the Hospital's manager regarding Davis's availability problem nor did any secretary inform Davis of her change in status prior to the election. Thus, nothing had occurred prior to the election to terminate Davis's eligibility to vote.

■ The Hospital also contends that the Board improperly excluded the vote of Mary Madden. It argues that the Board incorrectly concluded that Mary Madden was a statutory supervisor and thus impermissibly sustained the challenge to her ballot. The Hospital contends that the record reveals that Madden exercised no authority over bargaining unit employees and that the level of authority she had over non-unit employees did not involve a sufficient degree of independent judgment and discretion for her to qualify as a "supervisor." According to the Hospital, the overwhelming weight of Board precedent also supports this finding.

■ In order to establish that an employee is a supervisor, the evidence must show that an employee has the authority to engage in at least one of the twelve activities that Section 2(11) of the Act, 29 U.S.C. § 152(11), identifies as indicia of supervisory status; that is, the individual must have the authority to (1) hire, (2) transfer, (3) suspend, (4) lay off, (5) recall, (6) promote, (7) discharge, (8) assign, (9) reward, (10) discipline, (11) responsibly direct or (12) adjust grievances.

*Health Care & Retirement Corp.*, 511 U.S. at ——, 114 S.Ct. at 1780. Additionally, an employee's exercise of that authority must require independent judgment, *id.*, and cannot be "merely routine, clerical, perfunctory, or sporadic." *Lakeview Health Ctr.*, 308 N.L.R.B. 75, 78, 1992 WL 191676 (1992).

The Hospital contends that Madden exercised no authority over bargaining unit employees and that any authority she had over non-bargaining unit personnel did not involve the level of independent judgment necessary for her to be deemed "supervisory." It notes that all of Madden's decisions were evaluated by her supervisor; she did not have final authority to hire, lay off, or recall employees; and all of her reprimands and warnings were reviewed and investigated independently by her supervisor. Although admitting Madden could interview applicants, the Hospital claims this was used only as a screening mechanism.

 A Board determination regarding supervisory status is entitled to special weight and is to be accepted if it has warrant in the record and reasonable basis in the law. *Marine Eng'rs Beneficial Ass'n v. Interlake S.S. Co.*, 370 U.S. 173, 179 n. 6, 82 S.Ct. 1237, 1240 n. 6, 8 L.Ed.2d 418 (1962); *Davis Supermarkets, Inc. v. NLRB*, 2 F.3d 1162, 1173 (D.C.Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1368, 128 L.Ed.2d 45 (1994). The Board's determination here was clearly supported by evidence in the record. Madden's position differed from those of the other nurses. She had her own office and performed no direct patient care. Additionally, she oversaw non-unit employees, assigning them to particular cases and granting them overtime. And, although she did not hire employees, she was involved in the initial screening interviews. Such actions show that Madden was aligned with management as her hiring and evaluation work was a "regular and frequent portion[ ]" of her responsibilities. *Detroit College of Business*, 296 N.L.R.B. 318, 321, 1989 WL 224348 (1989). Thus, we hold the Board correctly concluded Madden was a supervisor and properly sustained the challenge to her ballot.

## III.  CONCLUSION

For the foregoing reasons, the conclusions of the NLRB are affirmed; the petition for review is denied; and the cross-petition for enforcement granted.